IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUNGARD RECOVERY SERVICES L.P., | : <br> : <br> : |
| Plaintiff, | : <br> : Civil Action No. 02 cv 3845 <br> : |
| v. | : <br> : |
| UNISOURCE WORLDWIDE, INC., | : <br> : **JURY TRIAL DEMANDED** <br> : |
| Defendant. | : <br> : |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendant Unisource Worldwide, Inc. ("Unisource") responds to plaintiff SunGard Recovery Services L.P.'s ("SunGard") Complaint as follows:

**ANSWER**

1. After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph one of the Complaint, and on that basis denies those averments.

2. Admitted.

3. The averments contained in paragraph three of the Complaint constitute conclusions of law as to which no response is required or permitted.

4. The averments contained in paragraph four of the Complaint constitute conclusions of law as to which no response is required or permitted.

5. After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph five of the Complaint, and on that basis denies those averments.

6. Unisource admits that, effective September 1, 1995, it entered into a Recovery Services Agreement, including Schedules A, B and C (referred to collectively as the "Agreement") with SunGard. Unisource denies SunGard's characterization of the Agreement, which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof.

7. Unisource admits that the parties entered into new Schedules to the Agreement. Unisource denies SunGard's characterization of the Schedules, which are writings that speak for themselves, and respectfully refers the Court to the Schedules for the terms thereof. Unisource specifically denies that Schedule A-2 had "an Agreed Term that was coterminous with the Agreed Term" for Schedule A-1. On the contrary, Schedule A-1 had an agreed term of 36 months commencing on February 1, 1997. Schedule A-2 also had an agreed term of 36 months, commencing on July 1, 1997.

8. After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph eight of the Complaint, and on that basis denies those averments.

9. Unisource admits that, in the Agreement, SunGard agreed to provide Unisource with certain services in the event that Unisource was unable to use its own data processing equipment. Unisource denies SunGard's characterization of the Agreement, which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof.

10. Unisource admits that, in the Agreement, Unisource agreed to pay SunGard monthly fees in exchange for the provision by SunGard to Unisource of certain services during the term of the Agreement. Unisource denies SunGard's characterization of the Agreement,

which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof.

11.   Unisource denies the averments contained in paragraph 11 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

12.   Unisource denies the averments contained in paragraph 12 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

13.   Unisource denies the averments contained in paragraph 13 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

14.   Unisource denies the averments contained in paragraph 14 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

15.   Unisource denies the averments contained in paragraph 15 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

16.   After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 16 of the complaint, and on that basis denies those averments.

17.   Unisource admits that it sent SunGard a letter dated March 8, 2000 in the form attached as Exhibit B to the Complaint. Unisource denies SunGard's characterization of the

March 8, 2000 letter, which is a writing that speaks for itself, and respectfully refers the Court to the March 8, 2000 for the contents thereof.

18.  Unisource admits that SunGard sent it a letter dated April 7, 2000 in the form attached as Exhibit C to the Complaint.  Unisource denies SunGard's characterization of the April 7, 2000 letter, which is a writing that speaks for itself, and respectfully refers the Court to April 7, 2000 for the contents thereof.

19.  Unisource denies SunGard's characterization of the Agreement, which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof.  Further, the averments contained in paragraph 19 of the Complaint concerning the legal effect of the Agreement constitute conclusions of law as to which no response is required or permitted.  By way of further answer, Unisource specifically denies that it has never given written notice of termination for Schedule C.

20.  Unisource admits that it has refused to make certain payments demanded by SunGard, but denies that it was legally obligated to make those payments.  Unisource denies SunGard's characterization of the Agreement, which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof.  By way of further response, Unisource terminated Schedules A-2, B and C in October of 1999.  Unisource's termination of these schedules prevented Schedule A-2 from renewing automatically, and terminated Schedules B and C effective August 31, 2000.  Further, Unisource is entitled to an offset against whatever it otherwise might have been obligated to pay SunGard for Schedules B and C for the period of September 1, 1999 through August 31, 2000 by reason of SunGard's fraud, negligent misrepresentation and breach of contract, as set forth in Unisource's counterclaims.

## Count I

21.     Unisource incorporates by reference paragraphs 1 through 20 of its Answer, Affirmative Defenses and Counterclaim.

22.     The averments contained in paragraph 22 of the Complaint constitute conclusions of law as to which no response is required or permitted.

23.     The averments contained in paragraph 23 of the Complaint constitute conclusions of law as to which no response is required or permitted.

24.     The averments contained in paragraph 24 of the Complaint constitute conclusions of law as to which no response is required or permitted.

25.     After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to whether SunGard has suffered any damages, and on that basis denies SunGard's averments concerning damages.  Unisource denies the remaining averments contained in paragraph 25 of the Complaint, insofar as such averments constitute conclusions of law as to which no response is required or permitted.  By way of further response, Unisource denies that it breached any contract with SunGard, and therefore denies that SunGard could have suffered any damages as a result of Unisource's alleged breach of contract.

WHEREFORE, Unisource respectfully requests that the Court enter judgment in its favor on Count I of the Complaint and award Unisource its attorneys' fees under the Agreement, together with such other and further relief as the Court may deem appropriate and just.

## Count II

26.     Unisource incorporates by reference paragraphs 1 through 25 of its Answer, Affirmative Defenses and Counterclaims.

27. After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 27 of the Complaint, and on that basis denies those averments.

28. The averments contained in paragraph 28 of the Complaint constitute conclusions of law as to which no response is required or permitted.

29. The averments contained in paragraph 29 of the Complaint constitute conclusions of law as to which no response is required or permitted.

WHEREFORE, Unisource respectfully requests that the Court enter judgment in its favor on Count II of the Complaint and award Unisource its attorneys' fees under the Agreement, together with such other and further relief as the Court may deem appropriate and just.

## AFFIRMATIVE DEFENSES

30. SunGard's Complaint fails to set forth a cause of action for unjust enrichment.

31. SunGard's claims are barred by the doctrines of waiver and equitable estoppel.

32. SunGard's claim for breach of contract is barred by the doctrine of accord and satisfaction.

33. SunGard's claims are barred by its willful interference with Unisource's ability to exercise its contractual rights.

34. SunGard's claims are barred by its fraudulent concealment and intentional and/or negligent misrepresentations.

35. SunGard's claims are barred by SunGard's procurement of the failure of a condition precedent.

36. SunGard's claims are barred by its breach of the implied duty of good faith and fair dealing.

37. SunGard's claims are barred by the doctrine of unclean hands.

38. SunGard's claims are barred by Unisource's substantial performance.

39. SunGard's claims under Schedule A-2 are barred by Unisource's timely written notice of termination.

WHEREFORE, Unisource respectfully requests that the Court enter judgment in its favor on Counts I and II of the Complaint and award Unisource its attorney's fees under the Agreement, together with such other and further relief as the Court may deem appropriate and just.

## COUNTERCLAIMS

For its counterclaims against SunGard, Unisource avers as follows:

40. Unisource incorporates by reference the averments contained in paragraphs 1 through 39, above, as though fully set forth herein.

41. Effective September 1, 1995, Unisource and SunGard entered into the Recovery Services Agreement attached as Exhibit "A" to SunGard's complaint.

42. Under the Agreement, SunGard promised to provide emergency data recovery and related services for an AS 400 mainframe computer that was contained in a Unisource facility located in St. Louis, Missouri and serviced through a Unisource facility in Itasca, Illinois.

43. By September, 1999, Unisource had begun using a different version of the AS 400 mainframe than was covered by the Agreement, and had moved the AS 400 mainframe to its facility in Exton, Pennsylvania. Unisource therefore no longer required the services that SunGard had agreed to provide in the Agreement.

44. Also by September, 1999, Unisource personnel began noticing that Unisource was receiving three monthly invoices from SunGard totaling $7,500, but that Unisource had not

received any visits from a SunGard representative, nor any user's guides, updates or revisions. Further, SunGard's services had never been tested.

45.	When investigating the basis for SunGard's invoices, Unisource was unable to locate a copy of the Agreement to determine what services SunGard was providing, or was supposed to provide, in exchange for the payment of these invoices. Unisource was also unaware of the formal requirements, if any, for terminating the Agreement.

46.	Accordingly, in or about September, 1999, Unisource contacted SunGard and asked SunGard to provide it with a copy of the Agreement. Unisource, through its representatives William Hennessey and Scott Moll, made it clear to SunGard that Unisource did not have a copy of the Agreement, was not aware of its terms, and was relying on SunGard to provide a copy of the Agreement to Unisource so that it could verify the pertinent contract terms.

47.	SunGard, through its representatives Robert DiBrino and Paula Moore, promised to give Unisource a copy of the Agreement, but also requested that it send representatives to meet with Unisource and deliver the Agreement in person.

48.	Unisource agreed to meet with SunGard on the understanding that SunGard would be bringing a copy of the Agreement to the meeting so that Unisource could review and confirm its terms. Unisource also made it clear to SunGard that the meeting would be for the purpose of winding up the parties' relations under the Agreement.

49.	In early October, 1999, Messrs. Hennessey and Moll of Unisource met with Mr. DiBrino and Mrs. Moore of SunGard.

50.	SunGard, despite its promise to do so, failed to bring a copy of the Agreement to the meeting. In fact, both Mr. DiBrino and Mrs. Moore professed ignorance of the Agreement's terms. Instead of coming prepared to discuss the winding up of the Agreement or its terms, Mr.

DiBrino and Mrs. Moore persisted in attempting to sell Unisource *even more* services, even though Unisource had made clear that it no longer wanted to purchase *any* services from SunGard for its St. Louis or Itasca facilities.

51.     In response, Messrs. Moll and Hennessey clearly and adamantly explained to SunGard that it no longer required SunGard's services for the St. Louis or Itasca facilities and that it wanted to terminate the Agreement as soon as possible. When Mr. DiBrino mentioned that "some" of SunGard's contracts automatically renew unless a termination notice is given, Messrs. Hennessey and Moll emphatically stated that they did not want the Agreement to renew automatically and repeated their request that SunGard provide them with a copy of the Agreement as soon as possible so that Unisource could exercise its right to insure that the Agreement did not renew. Mr. DiBrino and Mrs. Moore again promised to provide Unisource with a copy of the Agreement.

52.     By failing to bring a copy of the Agreement to the meeting or accurately advise Unisource of its terms, Moore and DiBrino fraudulently or negligently concealed from Unisource the true terms of the Agreement despite Unisource's clearly professed ignorance of those terms and its express, repeated requests for a copy of the Agreement.

53.     By approximately two weeks after the meeting, SunGard still had not provided Unisource with a copy of the Agreement, despite two requests by Unisource and SunGard's promise to do so, and despite Unisource's express statement that it wished to review the Agreement in order to confirm the Agreement's terms.

54.     Accordingly, William Hennessey called Paula Moore of SunGard to inquire into the status of the Agreement. Mrs. Moore informed Mr. Hennessey that she had referred the matter to Joe Walsh, SunGard's St. Louis representative.

55. Mr. Walsh failed to contact Mr. Hennessey until December, 1999. At this time, Mr. Walsh falsely and inaccurately advised Mr. Hennessey that the entire Agreement had already automatically renewed for another term, effective January 1, 2000.

56. Mr. Walsh's statements were false, inaccurate and misleading. The statements were false and inaccurate in that at least one schedule to the Agreement, Schedule A-2, was not scheduled to conclude until June 30, 2000, and written notice to prevent the automatic renewal of that schedule therefore could have provided, under the terms of the Agreement, as late as March 30, 2000. Moreover, even under SunGard's incorrect reading of Schedule A-2, that schedule was not due to conclude until January 31, 2000. In addition, Schedules B and C would not automatically renew again until August 31, 2000. Mr. Walsh's statements were misleading in that Unisource, without the benefit of a copy of the written Agreement, was unable to detect their inaccuracy.

57. After this conversation, Mr. Walsh finally sent Mr. Hennessey a copy of the Agreement. By that time, however, it was too late for Unisource to provide written notice of termination far enough in advance to prevent the automatic renewal of Schedule A-2 that SunGard now alleges was due on or before October 31, 1999.

58. Thereafter, Unisource made repeated attempts to secure SunGard's agreement to allow it to prevent the alleged automatic renewal, but to no avail.

59. Despite SunGard's knowledge that Unisource wanted to terminate the contract before any automatic renewal; despite Unisource's clear and vehement oral termination of the entire Agreement in October, 1999, and its written termination notice of March 8, 2000; and despite SunGard's repeated failure to provide Unisource with a copy of the Agreement as it had promised to do or explain the automatic renewal provision to Unisource during the time within

which Unisource could have prevented by written notice the automatic renewal that SunGard alleges, SunGard has still refused to agree to allow Unisource to terminate the Agreement and, to this day, insists that Unisource is obligated to pay it until January 31, 2003 for services under the Agreement that SunGard knows Unisource has not required since at least September of 1999.

60. In addition, SunGard claims that Unisource has never terminated Schedule C and that Unisource is obligated to pay for services under that schedule until August 31, 2003. In fact, Unisource terminated Schedule C both orally in October 1999 and in writing in March 2000, so Schedule C terminated effective August 31, 2000 and did not automatically renew.

## Count I: Fraud

61. Unisource incorporates by reference the averments contained in paragraphs 1 through 60, above, as though fully set forth herein.

62. As set forth above, SunGard fraudulently concealed from Unisource the terms of the Agreement, including the term allegedly requiring Unisource to give written notice of termination three months in advance of January 31, 2000 to prevent the automatic renewal of Schedule A-2 to the Agreement.

63. At all times relevant hereto, SunGard had a duty to disclose that term to Unisource because, among other reasons: (1) SunGard knew that Unisource did not have a copy of the Agreement, was ignorant of the Agreement's terms, and was relying on SunGard to provide a copy of the Agreement; (2) SunGard knew that Unisource wanted to exercise its right to terminate the Agreement before the automatic renewal that SunGard alleges, but was not aware of the alleged contractual requirements therefor and could not honor those requirements unless SunGard informed Unisource of the automatic renewal provision; and (3) SunGard expressly promised to provide Unisource with a copy of the Agreement, and made that promise

during the time in which Unisource still could have exercised its right to prevent the automatic renewal that SunGard alleges.

64. SunGard had ample opportunity to provide Unisource with a copy of the Agreement or inform Unisource of the terms of the automatic renewal provision, as Unisource had requested, within the time during which Unisource could have acted to prevent the automatic termination that SunGard alleges. SunGard intentionally failed to do so.

65. In failing to provide Unisource with a copy of the Agreement or an explanation of the automatic renewal provision before such time as Unisource could have exercised its right to terminate the Agreement and prevent the automatic renewal that SunGard alleges, SunGard intended to prevent Unisource from exercising its right to terminate the contract and intended to induce Unisource to refrain from giving the required written notice of termination.

66. Unisource relied to its detriment on SunGard's failure to disclose the terms of the Agreement, in that Unisource did not terminate the Agreement *in writing* before the date on which SunGard alleges that Schedule A-2 automatically renewed as Unisource would have done had SunGard disclosed the terms of the Agreement.

67. Unisource was justified in relying on SunGard's failure to disclose the terms of the Agreement because, among other reasons, it told SunGard that it did not have a copy of the Agreement but wanted to prevent automatic renewal and SunGard expressly promised to provide a copy of the Agreement.

68. As a result of its justifiable reliance on SunGard's failure to disclose the terms of the Agreement, Unisource has suffered and continues to suffer substantial damages.

69. SunGard's failure to disclose the terms of the Agreement was willful, intentional, malicious and outrageous.

70. In addition to Unisource's concealment of the Agreement's automatic renewal provision, Joe Walsh's statement to William Hennessey in or about December, 1999, that the Agreement had already automatically renewed as of January 1, 2000, was false because Schedule A-2 was not scheduled to conclude until June 30, 2000, and Unisource therefore had until March 30, 2000 to provide written notice of termination and prevent the schedule from renewing. Even under SunGard's incorrect reading of Schedule A-2, it could only have automatically renewed as SunGard alleges effective February 1, 2000. Moreover, Schedules B and C would not automatically renew again until August 31, 2000.

71. Mr. Walsh's misrepresentation concerned material facts.

72. In making the misrepresentation, Mr. Walsh knew that it was false or was reckless as to whether it was true or false.

73. In making the misrepresentation, Mr. Walsh intended to induce Unisource to rely on it.

74. Unisource justifiably relied on Mr. Walsh's misrepresentation to its detriment by, among other thing, refraining from giving written notice of termination because Mr. Walsh had told it that the Agreement already had automatically renewed.

75. As a result of its justifiable reliance on Mr. Walsh's misrepresentation, Unisource has suffered and continues to suffer substantial damages.

76. Mr. Walsh's misrepresentation was willful, intentional, malicious and outrageous.

WHEREFORE, in the event that the trier of fact should find that Unisource was required to give written notice on or before October 31, 1999, in order to avoid the automatic renewal of the Agreement or any schedule thereto, Unisource Worldwide, Inc., demands judgment in its favor on its claim for fraud and an award of monetary damages, including attorneys' fees under

the Agreement and punitive damages, together with such other and further relief as the Court deems appropriate and just.

### Count II:  Negligent Misrepresentation and Concealment

77.     Unisource incorporates by reference the averments contained in paragraphs 1 through 76, above, as though fully set forth herein.

78.     As set forth above, SunGard both concealed and misrepresented the true terms of the Agreement from and to Unisource, with the intent that Unisource rely on these misrepresentations and concealments to refrain from timely exercising its termination rights in accordance with the technical requirements of the Agreement.

79.     SunGard's misrepresentations and concealments concerned material facts.

80.     SunGard made these misrepresentations and concealed these materials facts without knowledge as to their truth, falsity, or misleading character, or under circumstances in which it ought to have known that they were false and misleading.

81.     SunGard intended that Unisource rely on it these misrepresentations and in concealing these material facts to refrain from giving written notice of termination in and after October 1999.

82.     Unisource justifiably and detrimentally relied on SunGard's misrepresentations and concealments by, among other thing, refraining from giving written notice of termination during the month of October 1999.

83.     As a result of its justifiable reliance on SunGard's misrepresentations and concealments, Unisource has suffered and continues to suffer substantial damages.

WHEREFORE, in the event that the trier of fact should find that Unisource was required to give written notice on or before October 31, 1999, in order to avoid the automatic renewal of

the Agreement or any schedule thereto, Unisource Worldwide, Inc., demands judgment in its favor on its claim for negligent misrepresentation and concealment and an award of monetary damages, including attorneys' fees under the Agreement and punitive damages, together with such other and further relief as the Court deems appropriate and just.

### Count III:  Breach of Contract

84. Unisource incorporates the averments contained in paragraphs 1 through 84, above, as though fully set forth herein.

85. The Agreement constituted a binding contract between Unisource and SunGard.

86. At all times material hereto, Unisource was ready, willing and able to perform its obligations under the Agreement.

87. SunGard, however, breached the Agreement by, *inter alia*, failing to provide the "current User's Guides for the Recovery Services and all applicable updates and revisions" to Unisource as SunGard was required to do under Paragraph A.6 of the Agreement, and failing to provide any reasonable level of customer service or customer contact and support so as to keep itself apprised of the status of Unisource's actual needs for services.

88. In addition, the Agreement, like every other contract, gave rise to an implied duty of good faith and fair dealing between the parties.

89. SunGard breached its duty of good faith and fair dealing by refusing to provide Unisource with a copy of the Agreement despite repeated requests therefor, by misinforming Unisource of the renewal date for the Agreement, and by insisting on strict compliance with supposed written termination provisions whose breach, if any, was procured through SunGard's own unfair and bad faith conduct.

15

90.     Unisource has suffered and continues to suffer substantial damages as a result of SunGard's breach of the Agreement.

WHEREFORE, Unisource Worldwide, Inc., demands judgment in its favor and an award of monetary damages, including attorneys' fees under the Agreement, together with such other and further relief as the Court deems appropriate and just.

                                                  _____

Howard D. Scher (Pa. No. 03673)
Craig D. Mills (Pa. No. 81331)
Eliot G. Long (Pa. No. 84970)
BUCHANAN INGERSOLL, P.C.
Eleven Penn Center
1835 Market – 14th Floor
Philadelphia, PA  19103
Tel.: (215) 665-8700
Fax.: (215) 665-8760

Attorneys for Defendant and
Counterclaim-Plaintiff
Unisource Worldwide, Inc.

Dated:  August 14, 2002

## CERTIFICATE OF SERVICE

I, Eliot G. Long, hereby certify that, on this 14th day of August, 2002, I caused a true and correct copy of the foregoing Answer, Affirmative Defenses and Counterclaims to be served on the following by hand delivery:

>Laurence S. Shastel, Esquire
>Rebecca D. Ward, Esquire
>Blank, Rome, Comisky & McCauley LLP
>One Logan Square
>Philadelphia, PA  19103
>
>Attorneys for Plaintiff
>SunGard Recovery Services L.P.