IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUNGARD RECOVERY SERVICES L.P., | : | |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | Civil Action No. 02-3845 (JMK) |
| v. | : | |
| | : | |
| UNISOURCE WORLDWIDE, INC., | : | |
| | : | |
| Defendant/Counterclaim Plaintiff. | : | |
| | : | |

## MOTION OF PLAINTIFF/COUNTERCLAIM-DEFENDANT SUNGARD RECOVERY SERVICES LP TO DISMISS COUNTERCLAIM COUNTS I AND II PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Plaintiff/Counterclaim Defendant SunGard Recovery Services LP, formerly known as SunGard Recovery Services Inc. ("SunGard"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves this Court for entry of an Order dismissing the Counts I and II of the Counterclaims of Defendant/Counterclaim Plaintiff Unisource Worldwide, Inc., for failure to state a claim upon which relief can be granted. As set forth more fully in SunGard's Memorandum of Law in support of this Motion (which is incorporated herein by reference), Counts I and II of the Counterclaims (for fraud and negligent misrepresentation/concealment, respectively) are predicated upon alleged misrepresentations made by SunGard between September 1999 and March 2000. Construing the allegations of the Counterclaims most favorably for Unisource, Unisource was aware of the alleged falsity of these statements no later than March 2000. However, Unisource's Counterclaims were not brought until August 2002, well beyond the two-year statute of limitations of 42 Pa. C.S. § 5524(7).

Accordingly, SunGard respectfully asks that this Court dismiss Counts I and II of the

Counterclaims for failure to state a claim upon which relief can be granted.

Dated: September 13, 2002          BLANK ROME LLP


                                   _____
                                   James T. Smith, Esq.
                                   Rebecca D. Ward, Esq.
                                   Brian S. Paszamant, Esq.
                                   One Logan Square
                                   Philadelphia, PA 19103
                                   Telephone:    (215) 569-5500
                                   Facsimile:    (215) 569-5555

                                   Attorneys for Plaintiff SunGard Recovery Services LP,
                                   formerly known as SunGard Recovery Services Inc.

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUNGARD RECOVERY SERVICES L.P.,   :
                                       :
    Plaintiff/Counterclaim Defendant,   :
                                       :      Civil Action No. 02-3845 (JMK)
    v.                            :
                                       :
UNISOURCE WORLDWIDE, INC.,   :
                                       :
    Defendant/Counterclaim Plaintiff.   :
                                       :
                                     :

### PLAINTIFF/COUNTERCLAIM-DEFENDANT SUNGARD RECOVERY SERVICES LP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I AND II OF THE COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff/Counterclaim-Defendant SunGard Recovery Services LP ("SunGard"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Counts I and II of the Counterclaims of Defendant/Counterclaim Plaintiff Unisource Worldwide, Inc. ("Unisource") for failure to state a claim upon which relief can be granted. As set forth more fully in SunGard's Memorandum of Law in support of this Motion (which is incorporated herein by reference), Counts I and II of the Counterclaims (for fraud and negligent misrepresentation/concealment, respectively) are predicated upon alleged misrepresentations made by SunGard between September 1999 and March 2000. Construing the allegations of the Counterclaims most favorably for Unisource, Unisource was aware of the alleged falsity of this statements no later than March 2000. However, Unisource's Counterclaims were not brought until August 2002, well beyond the two-year statute of limitations of 42 Pa. C.S. §

5524(7). Accordingly, under the law of the Commonwealth of Pennsylvania and governing precedent within the Third Circuit, these Counterclaims are time barred and subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## THE ALLEGATIONS OF THE COUNTERCLAIMS

As alleged in Unisource's Counterclaims, effective September 1, 1995 Unisource and SunGard into a Recovery Services Agreement. See Answer, Affirmative Defenses and Counterclaims (hereinafter "Counterclaims at ¶ ___") at ¶ 41.[1] Unisource agrees that a copy of the Recovery Services Agreement is attached as Exhibit A to SunGard's own Complaint. Id.[2] Under the Agreement, SunGard was to provide disaster recovery services for Unisource's facilities in St. Louis, Missouri. Id. at ¶ 42. By September 1999, Unisource had adopted a different version of hardware and relocated the hardware from St. Louis to Exton, Pennsylvania. Id. at ¶ 43. Unisource alleges that in September 1999, it began investigating invoices received from SunGard under the Agreement, but was unable to locate a copy of the Agreement in Unisource's own files. Id. at ¶¶ 44-45.

Thereafter, still in September 1999, Unisource's employees William Hennessey and Scott Moll of Unisource's Exton offices contacted SunGard and requested a copy of the Agreement. Id. at ¶ 46. Unisource alleges that in early October, Messrs. Hennessey and Moll met with SunGard representatives, but were not given a copy of the Agreement at that time. Id. at ¶ 50. Two weeks later, Mr. Hennessey again contacted SunGard and was told

---

[1] A true and accurate copy of the Counterclaims is attached hereto as Exhibit 1.

[2] For the Court's convenience, a true and accurate copy of the Agreement is attached hereto as Exhibit 2.

that the matter had been referred to another SunGard employee, who spoke with Mr. Hennessey in December 1999 and who allegedly informed Mr. Hennessey that the entire Agreement had automatically renewed effective January 1, 2000. Id. at ¶¶ 53-55. After this conversation, Mr. Hennessey received a copy of the Agreement, id. at ¶ 57, and as a result learned the inaccuracy of the statements made to Unisource in December 1999. Id. at ¶ 56. Unisource concedes that on March 8, 2000 – following the conversations with SunGard in December 1999 and its receipt of the Agreement – Unisource attempted to given written notice of termination by letter dated March 8, 2000. See Answer at ¶ 17 (incorporated into the Counterclaims by ¶ 40).[3] As shown therein, Mr. Hennessey is located in Unisource's Exton, Pennsylvania offices and communicated with SunGard's principal place of business in Wayne, Pennsylvania. Ex. 3.

## ARGUMENT

Because all the alleged misrepresentations or acts of concealment underlying Counts I and II occurred prior to March 8, 2000 – when Unisource learned of the purported falsity of SunGard's statements – Unisource's Counterclaims based thereon are barred by the two-year statute of limitations set forth in 42 Pa. C.S. § 5524(7). Under governing Third Circuit precedent, Counts I and II should be dismissed as time-barred under Federal Rule of Civil Procedure 12(b)(6).

---

[3] For the Court's convenience, a true and accurate copy of the March 8, 2000 Letter is attached hereto as Exhibit 3.

A.   **Dismissal Under Rule 12(b)(6) Is Required Where the Face of a Pleading Shows a Claim is Barred By the Statute of Limitations.**

Pursuant to FED. R. CIV. P. 12(b)(6), this court should dismiss a claim if it is clear "that no relief could be granted under any set of facts that could be proved *consistent with the allegations*." Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)) (emphasis added); Piecknick v. Commonwealth of Pennsylvania, 36 F. 3d 1250 (3d Cir. 1994). In reviewing a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the pleading and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." Sturm v. Clark, 835 F. 2d 1009, 1011 (3rd Cir. 1987) (citations omitted).[4] "The purpose of a 12(b)(6) motion is to test the legal sufficiency of" a claim. Winterberg v. CNA Ins. Co., 868 F. Supp. 713, 717 (E.D. Pa. 1994). Finally, a court may grant a motion to dismiss as to a portion of a pleading. Elliot v. State Farm Mut. Auto. Ins. Co., 786 F. Supp. 487 (E.D. Pa. 1992).

In a diversity case such as this one, a federal court must apply state substantive law, including statutes of limitations. Ciccarelli v. Carey Canadian Mines, Ltd., 757 F. 2d 548, 552 (3d Cir. 1985). The law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. U.S. Veterans' Admin. Hosp., 514 F. 2d 1092, 1094 (3d Cir. 1975);

---

[4] Needless to say, SunGard does not concede the accuracy of Unisource's allegations, but recognizes that for purposes of the instant Motion the Court is required to accept the allegations as true.

Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978); Cito v. Bridgewater
Twp. Police Dep't, 892 F. 2d 23, 25 (3d Cir. 1989); Davis v. Grusemeyer, 996 F. 2d 617, 623
(3d Cir. 1993); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F. 3d 1380, 1385 n. 1 (3d
Cir. 1994) ("[w]hile the language of FED.R.CIV.P. 8(c) indicates that a statute of limitations
defense cannot be used in the context of Rule 12(b)(6) motion to dismiss, an exception is
made where the complaint facially shows noncompliance with the limitations period and the
affirmative defense clearly appears on the face of the pleading"); Rycoline Prods., Inc. v. C &
W Unlimited, 109 F. 3d 883, 886 (3rd Cir. 1997).

**B.    Counts I and II of the Counterclaims are Time-Barred.**

The allegations of Unisource's Counterclaims show that (1) all the purported
misrepresentations occurred in September – December 1999; and (2) by March 8, 2000,
Unisource had learned of the alleged falsity of the statements and attempted to terminate the
Agreement by letter of the same date. Yet Unisource did not file its Counterclaims until
August 2002, at least five months after the applicable statute of limitations had expired.
Therefore, dismissal with prejudice under Rule 12(b)(6) is appropriate.

**1.    Pennsylvania's statute of limitations applies to Unisource's counterclaims.**

SunGard and Unisource agreed that the Agreement "shall be governed by substantive
Pennsylvania law." Ex. 1 at § D(10). Although such a choice-of-law provision does not
automatically cover tort claims such as those asserted by Unisource in Counts I and II of the
Counterclaims, Pennsylvania law still applies. First, in its counterclaims, Unisource
essentially contends that the renewed Agreement is unenforceable because SunGard's

purported fraud or negligent misrepresentation/concealment induced Unisource to sit on its rights and not take steps to terminate the Agreement prior to the effective date of an automatic renewal.   In such circumstances, the courts of this circuit interpret such a contractual choice-of-law provision to govern tort claims attacking the validity of the contract itself.   See, e.g., In re Allegheny International, Inc., 954 F. 2d 17, 178 (3d Cir. 1992) (applying Pennsylvania choice-of-law provision to claim of fraudulent inducement); Corestates Bank, N.A. v. Signet Bank, Civ. A. No. 96-3199, 1996 WL 482909 at *5 n. 3 (Aug. 26, 1996 )(Yohn, J.) (where tort claims amounted to argument that claimant had been fraudulently misled into contract, then contractual choice-of-law provision would also apply to tort claims).

Second, even under a standard choice-of-law analysis, Pennsylvania law would govern a claim based upon misrepresentations made by one corporation located in Pennsylvania to representatives of another corporation located in Pennsylvania.   Pennsylvania has adopted a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796, 805 (1964). This analysis consists of two steps. First, the court must "look to see whether a false conflict exists" between the competing policies and interests of the relevant states. LeJeune v. Bliss-Salem, Inc., 85 F. 3d 1069, 1071 (3rd Cir. 1996).

Strikingly, in this case, the Court need not engage in any such analysis:   The Counterclaims clearly show that the purported misrepresentations were made in Pennsylvania to Unisource's Exton, Pennsylvania employees, William Hennessey and Scott Moll.   Further, Unisource's written attempt to terminate the Agreement, after a copy of the

relevant documents had been delivered to William Hennessey – who is located <u>in</u> <u>Pennsylvania</u> – was sent from Exton to Wayne, Pennsylvania. In short, Pennsylvania law governs Unisource's counterclaims, both under the choice-of-law provision of the contract <u>and</u> under common law choice-of-law standards.

### 2. A two-year statute of limitations applies to Unisource's claims for fraud and negligent misrepresentation/concealment.

Pennsylvania statute provides for a two-year statute of limitations for fraud and negligent misrepresentation claims:

> The following actions and proceedings must be commenced within two years:
>
> (7)   Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa. C.S.A. § 5524(7). <u>See</u> <u>Gurfein v. Sovereign Group</u>, 826 Supp. 890, 917 (E.D. Pa. 1993) (§ 5524(7) applies to claims of fraud, negligent misrepresentation and breach of fiduciary duty); <u>Today's Exp., Inc. v. Barkan</u>, 426 Pa. Super. 48, 626 A.2d 187 (1993) (§ 5524(7) applies to fraud and negligent misrepresentation claims).

Further, the fact that SunGard's complaint was filed within the applicable statutes of limitations for <u>SunGard's claims</u> (*i.e.*, within four years of the alleged breach of contract) cannot save Unisource's own time-barred counterclaims for fraud and negligent misrepresentation. <u>See</u>, <u>e.g.</u>, <u>Harmer v. Hulsey</u>, 321 Pa. Super. 11, 13, 467 A.2d 867, 868-69 (1983) ("a counterclaim . . . must be raised within the time allotted for an action under the

appropriate statute of limitations . . . That [counter-claimant] was either unaware of his potential claim or the two-year limitation, or chose not to bring an action until [plaintiff] sued, does not suffice to toll the statute of limitations").

Thus, to the extent Unisource has any valid affirmative claims for fraud or negligent misrepresentation, Unisource was required to bring those claims within two years. Its own pleading, however, shows that the purported misrepresentations occurred in the time period of September 1999 through December 1999. Additionally, by March 8, 2000 Unisource had received copies of the Agreement and could determine the alleged falsity of the statements supposedly made by SunGard's representatives. The Counterclaims filed in August 2002 – at least five months after the two-year statute of limitations had expired – are time-barred.

## CONCLUSION

For the foregoing reasons, Plaintiff/Counterclaim-Defendant SunGard Recovery Services LP respectfully asks that this Court enter an Order dismissing Counts I and II of the Counterclaims, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: September 13, 2002        BLANK ROME LLP


_____
James T. Smith, Esq.
Rebecca D. Ward, Esq.
Brian S. Paszamant, Esq.
One Logan Square
Philadelphia, PA 19103
Telephone:    (215) 569-5500
Facsimile:     (215) 569-5555

Attorneys for Plaintiff SunGard Recovery Services LP, formerly known as SunGard Recovery Services Inc.

-8-

## CERTIFICATE OF SERVICE

I, Rebecca D. Ward, hereby certify that on September 13, 2002 I caused a true and accurate copy of the foregoing Motion for Dismiss Counts I and II of the Counterclaims, with Memorandum of Law and proposed Order, to be hand-delivered by messenger addressed as follows:

> Eliot G. Long, Esq.
> Buchanan Ingersoll
> Eleven Penn Center, 14th Floor
> 1835 Market Street
> Philadelphia, PA 19130

_____
Rebecca D. Ward

**INDEX 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SUNGARD RECOVERY SERVICES L.P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 02 cv 3845 |
| v. | : | |
| | : | |
| UNISOURCE WORLDWIDE, INC., | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant Unisource Worldwide, Inc. ("Unisource") responds to plaintiff SunGard Recovery Services L.P.'s ("SunGard") Complaint as follows:

### ANSWER

1.     After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph one of the Complaint, and on that basis denies those averments.

2.     Admitted.

3.     The averments contained in paragraph three of the Complaint constitute conclusions of law as to which no response is required or permitted.

4.     The averments contained in paragraph four of the Complaint constitute conclusions of law as to which no response is required or permitted.

5.     After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph five of the Complaint, and on that basis denies those averments.

6.     Unisource admits that, effective September 1, 1995, it entered into a Recovery Services Agreement, including Schedules A, B and C (referred to collectively as the "Agreement") with SunGard.  Unisource denies SunGard's characterization of the Agreement, which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof.

7.     Unisource admits that the parties entered into new Schedules to the Agreement. Unisource denies SunGard's characterization of the Schedules, which are writings that speak for themselves, and respectfully refers the Court to the Schedules for the terms thereof.  Unisource specifically denies that Schedule A-2 had "an Agreed Term that was coterminous with the Agreed Term" for Schedule A-1.  On the contrary, Schedule A-1 had an agreed term of 36 months commencing on February 1, 1997.  Schedule A-2 also had an agreed term of 36 months, commencing on July 1, 1997.

8.     After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph eight of the Complaint, and on that basis denies those averments.

9.     Unisource admits that, in the Agreement, SunGard agreed to provide Unisource with certain services in the event that Unisource was unable to use its own data processing equipment.  Unisource denies SunGard's characterization of the Agreement, which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof.

10.    Unisource admits that, in the Agreement, Unisource agreed to pay SunGard monthly fees in exchange for the provision by SunGard to Unisource of certain services during the term of the Agreement.  Unisource denies SunGard's characterization of the Agreement,

which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof.

11.    Unisource denies the averments contained in paragraph 11 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

12.    Unisource denies the averments contained in paragraph 12 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

13.    Unisource denies the averments contained in paragraph 13 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

14.    Unisource denies the averments contained in paragraph 14 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

15.    Unisource denies the averments contained in paragraph 15 of the Complaint, which constitute characterizations of the Agreement. The Agreement is a writing that speaks for itself, and Unisource respectfully refers the Court to the Agreement for the terms thereof.

16.    After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 16 of the complaint, and on that basis denies those averments.

17.    Unisource admits that it sent SunGard a letter dated March 8, 2000 in the form attached as Exhibit B to the Complaint. Unisource denies SunGard's characterization of the

March 8, 2000 letter, which is a writing that speaks for itself, and respectfully refers the Court to the March 8, 2000 for the contents thereof.

18.     Unisource admits that SunGard sent it a letter dated April 7, 2000 in the form attached as Exhibit C to the Complaint. Unisource denies SunGard's characterization of the April 7, 2000 letter, which is a writing that speaks for itself, and respectfully refers the Court to April 7, 2000 for the contents thereof.

19.     Unisource denies SunGard's characterization of the Agreement, which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof. Further, the averments contained in paragraph 19 of the Complaint concerning the legal effect of the Agreement constitute conclusions of law as to which no response is required or permitted. By way of further answer, Unisource specifically denies that it has never given written notice of termination for Schedule C.

20.     Unisource admits that it has refused to make certain payments demanded by SunGard, but denies that it was legally obligated to make those payments. Unisource denies SunGard's characterization of the Agreement, which is a writing that speaks for itself, and respectfully refers the Court to the Agreement for the terms thereof. By way of further response, Unisource terminated Schedules A-2, B and C in October of 1999. Unisource's termination of these schedules prevented Schedule A-2 from renewing automatically, and terminated Schedules B and C effective August 31, 2000. Further, Unisource is entitled to an offset against whatever it otherwise might have been obligated to pay SunGard for Schedules B and C for the period of September 1, 1999 through August 31, 2000 by reason of SunGard's fraud, negligent misrepresentation and breach of contract, as set forth in Unisource's counterclaims.

4

## Count I

21.     Unisource incorporates by reference paragraphs 1 through 20 of its Answer, Affirmative Defenses and Counterclaim.

22.     The averments contained in paragraph 22 of the Complaint constitute conclusions of law as to which no response is required or permitted.

23.     The averments contained in paragraph 23 of the Complaint constitute conclusions of law as to which no response is required or permitted.

24.     The averments contained in paragraph 24 of the Complaint constitute conclusions of law as to which no response is required or permitted.

25.     After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to whether SunGard has suffered any damages, and on that basis denies SunGard's averments concerning damages. Unisource denies the remaining averments contained in paragraph 25 of the Complaint, insofar as such averments constitute conclusions of law as to which no response is required or permitted. By way of further response, Unisource denies that it breached any contract with SunGard, and therefore denies that SunGard could have suffered any damages as a result of Unisource's alleged breach of contract.

WHEREFORE, Unisource respectfully requests that the Court enter judgment in its favor on Count I of the Complaint and award Unisource its attorneys' fees under the Agreement, together with such other and further relief as the Court may deem appropriate and just.

## Count II

26.     Unisource incorporates by reference paragraphs 1 through 25 of its Answer, Affirmative Defenses and Counterclaims.

27.    After reasonable investigation, Unisource is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 27 of the Complaint, and on that basis denies those averments.

28.    The averments contained in paragraph 28 of the Complaint constitute conclusions of law as to which no response is required or permitted.

29.    The averments contained in paragraph 29 of the Complaint constitute conclusions of law as to which no response is required or permitted.

WHEREFORE, Unisource respectfully requests that the Court enter judgment in its favor on Count II of the Complaint and award Unisource its attorneys' fees under the Agreement, together with such other and further relief as the Court may deem appropriate and just.

### AFFIRMATIVE DEFENSES

30.    SunGard's Complaint fails to set forth a cause of action for unjust enrichment.

31.    SunGard's claims are barred by the doctrines of waiver and equitable estoppel.

32.    SunGard's claim for breach of contract is barred by the doctrine of accord and satisfaction.

33.    SunGard's claims are barred by its willful interference with Unisource's ability to exercise its contractual rights.

34.    SunGard's claims are barred by its fraudulent concealment and intentional and/or negligent misrepresentations.

35.    SunGard's claims are barred by SunGard's procurement of the failure of a condition precedent.

36.    SunGard's claims are barred by its breach of the implied duty of good faith and fair dealing.

6

37.    SunGard's claims are barred by the doctrine of unclean hands.

38.    SunGard's claims are barred by Unisource's substantial performance.

39.    SunGard's claims under Schedule A-2 are barred by Unisource's timely written notice of termination.

WHEREFORE, Unisource respectfully requests that the Court enter judgment in its favor on Counts I and II of the Complaint and award Unisource its attorney's fees under the Agreement, together with such other and further relief as the Court may deem appropriate and just.

## COUNTERCLAIMS

For its counterclaims against SunGard, Unisource avers as follows:

40.    Unisource incorporates by reference the averments contained in paragraphs 1 through 39, above, as though fully set forth herein.

41.    Effective September 1, 1995, Unisource and SunGard entered into the Recovery Services Agreement attached as Exhibit "A" to SunGard's complaint.

42.    Under the Agreement, SunGard promised to provide emergency data recovery and related services for an AS 400 mainframe computer that was contained in a Unisource facility located in St. Louis, Missouri and serviced through a Unisource facility in Itasca, Illinois.

43.    By September, 1999, Unisource had begun using a different version of the AS 400 mainframe than was covered by the Agreement, and had moved the AS 400 mainframe to its facility in Exton, Pennsylvania. Unisource therefore no longer required the services that SunGard had agreed to provide in the Agreement.

44.    Also by September, 1999, Unisource personnel began noticing that Unisource was receiving three monthly invoices from SunGard totaling $7,500, but that Unisource had not

7

received any visits from a SunGard representative, nor any user's guides, updates or revisions. Further, SunGard's services had never been tested.

45.    When investigating the basis for SunGard's invoices, Unisource was unable to locate a copy of the Agreement to determine what services SunGard was providing, or was supposed to provide, in exchange for the payment of these invoices. Unisource was also unaware of the formal requirements, if any, for terminating the Agreement.

46.    Accordingly, in or about September, 1999, Unisource contacted SunGard and asked SunGard to provide it with a copy of the Agreement. Unisource, through its representatives William Hennessey and Scott Moll, made it clear to SunGard that Unisource did not have a copy of the Agreement, was not aware of its terms, and was relying on SunGard to provide a copy of the Agreement to Unisource so that it could verify the pertinent contract terms.

47.    SunGard, through its representatives Robert DiBrino and Paula Moore, promised to give Unisource a copy of the Agreement, but also requested that it send representatives to meet with Unisource and deliver the Agreement in person.

48.    Unisource agreed to meet with SunGard on the understanding that SunGard would be bringing a copy of the Agreement to the meeting so that Unisource could review and confirm its terms. Unisource also made it clear to SunGard that the meeting would be for the purpose of winding up the parties' relations under the Agreement.

49.    In early October, 1999, Messrs. Hennessey and Moll of Unisource met with Mr. DiBrino and Mrs. Moore of SunGard.

50.    SunGard, despite its promise to do so, failed to bring a copy of the Agreement to the meeting. In fact, both Mr. DiBrino and Mrs. Moore professed ignorance of the Agreement's terms. Instead of coming prepared to discuss the winding up of the Agreement or its terms, Mr.

DiBrino and Mrs. Moore persisted in attempting to sell Unisource *even more* services, even though Unisource had made clear that it no longer wanted to purchase *any* services from SunGard for its St. Louis or Itasca facilities.

51.    In response, Messrs. Moll and Hennessey clearly and adamantly explained to SunGard that it no longer required SunGard's services for the St. Louis or Itasca facilities and that it wanted to terminate the Agreement as soon as possible. When Mr. DiBrino mentioned that "some" of SunGard's contracts automatically renew unless a termination notice is given, Messrs. Hennessey and Moll emphatically stated that they did not want the Agreement to renew automatically and repeated their request that SunGard provide them with a copy of the Agreement as soon as possible so that Unisource could exercise its right to insure that the Agreement did not renew. Mr. DiBrino and Mrs. Moore again promised to provide Unisource with a copy of the Agreement.

52.    By failing to bring a copy of the Agreement to the meeting or accurately advise Unisource of its terms, Moore and DiBrino fraudulently or negligently concealed from Unisource the true terms of the Agreement despite Unisource's clearly professed ignorance of those terms and its express, repeated requests for a copy of the Agreement.

53.    By approximately two weeks after the meeting, SunGard still had not provided Unisource with a copy of the Agreement, despite two requests by Unisource and SunGard's promise to do so, and despite Unisource's express statement that it wished to review the Agreement in order to confirm the Agreement's terms.

54.    Accordingly, William Hennessey called Paula Moore of SunGard to inquire into the status of the Agreement. Mrs. Moore informed Mr. Hennessey that she had referred the matter to Joe Walsh, SunGard's St. Louis representative.

9

55.     Mr. Walsh failed to contact Mr. Hennessey until December, 1999. At this time, Mr. Walsh falsely and inaccurately advised Mr. Hennessey that the entire Agreement had already automatically renewed for another term, effective January 1, 2000.

56.     Mr. Walsh's statements were false, inaccurate and misleading. The statements were false and inaccurate in that at least one schedule to the Agreement, Schedule A-2, was not scheduled to conclude until June 30, 2000, and written notice to prevent the automatic renewal of that schedule therefore could have provided, under the terms of the Agreement, as late as March 30, 2000. Moreover, even under SunGard's incorrect reading of Schedule A-2, that schedule was not due to conclude until January 31, 2000. In addition, Schedules B and C would not automatically renew again until August 31, 2000. Mr. Walsh's statements were misleading in that Unisource, without the benefit of a copy of the written Agreement, was unable to detect their inaccuracy.

57.     After this conversation, Mr. Walsh finally sent Mr. Hennessey a copy of the Agreement. By that time, however, it was too late for Unisource to provide written notice of termination far enough in advance to prevent the automatic renewal of Schedule A-2 that SunGard now alleges was due on or before October 31, 1999.

58.     Thereafter, Unisource made repeated attempts to secure SunGard's agreement to allow it to prevent the alleged automatic renewal, but to no avail.

59.     Despite SunGard's knowledge that Unisource wanted to terminate the contract before any automatic renewal; despite Unisource's clear and vehement oral termination of the entire Agreement in October, 1999, and its written termination notice of March 8, 2000; and despite SunGard's repeated failure to provide Unisource with a copy of the Agreement as it had promised to do or explain the automatic renewal provision to Unisource during the time within

which Unisource could have prevented by written notice the automatic renewal that SunGard alleges, SunGard has still refused to agree to allow Unisource to terminate the Agreement and, to this day, insists that Unisource is obligated to pay it until January 31, 2003 for services under the Agreement that SunGard knows Unisource has not required since at least September of 1999.

60.    In addition, SunGard claims that Unisource has never terminated Schedule C and that Unisource is obligated to pay for services under that schedule until August 31, 2003. In fact, Unisource terminated Schedule C both orally in October 1999 and in writing in March 2000, so Schedule C terminated effective August 31, 2000 and did not automatically renew.

### Count I:  Fraud

61.    Unisource incorporates by reference the averments contained in paragraphs 1 through 60, above, as though fully set forth herein.

62.    As set forth above, SunGard fraudulently concealed from Unisource the terms of the Agreement, including the term allegedly requiring Unisource to give written notice of termination three months in advance of January 31, 2000 to prevent the automatic renewal of Schedule A-2 to the Agreement.

63.    At all times relevant hereto, SunGard had a duty to disclose that term to Unisource because, among other reasons:  (1) SunGard knew that Unisource did not have a copy of the Agreement, was ignorant of the Agreement's terms, and was relying on SunGard to provide a copy of the Agreement; (2) SunGard knew that Unisource wanted to exercise its right to terminate the Agreement before the automatic renewal that SunGard alleges, but was not aware of the alleged contractual requirements therefor and could not honor those requirements unless SunGard informed Unisource of the automatic renewal provision; and (3) SunGard expressly promised to provide Unisource with a copy of the Agreement, and made that promise

11

during the time in which Unisource still could have exercised its right to prevent the automatic renewal that SunGard alleges.

64.    SunGard had ample opportunity to provide Unisource with a copy of the Agreement or inform Unisource of the terms of the automatic renewal provision, as Unisource had requested, within the time during which Unisource could have acted to prevent the automatic termination that SunGard alleges.  SunGard intentionally failed to do so.

65.    In failing to provide Unisource with a copy of the Agreement or an explanation of the automatic renewal provision before such time as Unisource could have exercised its right to terminate the Agreement and prevent the automatic renewal that SunGard alleges, SunGard intended to prevent Unisource from exercising its right to terminate the contract and intended to induce Unisource to refrain from giving the required written notice of termination.

66.    Unisource relied to its detriment on SunGard's failure to disclose the terms of the Agreement, in that Unisource did not terminate the Agreement *in writing* before the date on which SunGard alleges that Schedule A-2 automatically renewed as Unisource would have done had SunGard disclosed the terms of the Agreement.

67.    Unisource was justified in relying on SunGard's failure to disclose the terms of the Agreement because, among other reasons, it told SunGard that it did not have a copy of the Agreement but wanted to prevent automatic renewal and SunGard expressly promised to provide a copy of the Agreement.

68.    As a result of its justifiable reliance on SunGard's failure to disclose the terms of the Agreement, Unisource has suffered and continues to suffer substantial damages.

69.    SunGard's failure to disclose the terms of the Agreement was willful, intentional, malicious and outrageous.

70.    In addition to Unisource's concealment of the Agreement's automatic renewal provision, Joe Walsh's statement to William Hennessey in or about December, 1999, that the Agreement had already automatically renewed as of January 1, 2000, was false because Schedule A-2 was not scheduled to conclude until June 30, 2000, and Unisource therefore had until March 30, 2000 to provide written notice of termination and prevent the schedule from renewing. Even under SunGard's incorrect reading of Schedule A-2, it could only have automatically renewed as SunGard alleges effective February 1, 2000. Moreover, Schedules B and C would not automatically renew again until August 31, 2000.

71.    Mr. Walsh's misrepresentation concerned material facts.

72.    In making the misrepresentation, Mr. Walsh knew that it was false or was reckless as to whether it was true or false.

73.    In making the misrepresentation, Mr. Walsh intended to induce Unisource to rely on it.

74.    Unisource justifiably relied on Mr. Walsh's misrepresentation to its detriment by, among other thing, refraining from giving written notice of termination because Mr. Walsh had told it that the Agreement already had automatically renewed.

75.    As a result of its justifiable reliance on Mr. Walsh's misrepresentation, Unisource has suffered and continues to suffer substantial damages.

76.    Mr. Walsh's misrepresentation was willful, intentional, malicious and outrageous.

WHEREFORE, in the event that the trier of fact should find that Unisource was required to give written notice on or before October 31, 1999, in order to avoid the automatic renewal of the Agreement or any schedule thereto, Unisource Worldwide, Inc., demands judgment in its favor on its claim for fraud and an award of monetary damages, including attorneys' fees under

13

the Agreement and punitive damages, together with such other and further relief as the Court deems appropriate and just.

**Count II: Negligent Misrepresentation and Concealment**

77.    Unisource incorporates by reference the averments contained in paragraphs 1 through 76, above, as though fully set forth herein.

78.    As set forth above, SunGard both concealed and misrepresented the true terms of the Agreement from and to Unisource, with the intent that Unisource rely on these misrepresentations and concealments to refrain from timely exercising its termination rights in accordance with the technical requirements of the Agreement.

79.    SunGard's misrepresentations and concealments concerned material facts.

80.    SunGard made these misrepresentations and concealed these materials facts without knowledge as to their truth, falsity, or misleading character, or under circumstances in which it ought to have known that they were false and misleading.

81.    SunGard intended that Unisource rely on it these misrepresentations and in concealing these material facts to refrain from giving written notice of termination in and after October 1999.

82.    Unisource justifiably and detrimentally relied on SunGard's misrepresentations and concealments by, among other thing, refraining from giving written notice of termination during the month of October 1999.

83.    As a result of its justifiable reliance on SunGard's misrepresentations and concealments, Unisource has suffered and continues to suffer substantial damages.

WHEREFORE, in the event that the trier of fact should find that Unisource was required to give written notice on or before October 31, 1999, in order to avoid the automatic renewal of

14

the Agreement or any schedule thereto, Unisource Worldwide, Inc., demands judgment in its favor on its claim for negligent misrepresentation and concealment and an award of monetary damages, including attorneys' fees under the Agreement and punitive damages, together with such other and further relief as the Court deems appropriate and just.

### Count III:  Breach of Contract

84.    Unisource incorporates the averments contained in paragraphs 1 through 84, above, as though fully set forth herein.

85.    The Agreement constituted a binding contract between Unisource and SunGard.

86.    At all times material hereto, Unisource was ready, willing and able to perform its obligations under the Agreement.

87.    SunGard, however, breached the Agreement by, *inter alia*, failing to provide the "current User's Guides for the Recovery Services and all applicable updates and revisions" to Unisource as SunGard was required to do under Paragraph A.6 of the Agreement, and failing to provide any reasonable level of customer service or customer contact and support so as to keep itself apprised of the status of Unisource's actual needs for services.

88.    In addition, the Agreement, like every other contract, gave rise to an implied duty of good faith and fair dealing between the parties.

89.    SunGard breached its duty of good faith and fair dealing by refusing to provide Unisource with a copy of the Agreement despite repeated requests therefor, by misinforming Unisource of the renewal date for the Agreement, and by insisting on strict compliance with supposed written termination provisions whose breach, if any, was procured through SunGard's own unfair and bad faith conduct.

90.    Unisource has suffered and continues to suffer substantial damages as a result of

SunGard's breach of the Agreement.

WHEREFORE, Unisource Worldwide, Inc., demands judgment in its favor and an award

of monetary damages, including attorneys' fees under the Agreement, together with such other

and further relief as the Court deems appropriate and just.

_____

Howard D. Scher (Pa. No. 03673)
Craig D. Mills (Pa. No. 81331)
Eliot G. Long (Pa. No. 84970)
BUCHANAN INGERSOLL, P.C.
Eleven Penn Center
1835 Market — 14th Floor
Philadelphia, PA  19103
Tel.:  (215) 665-8700
Fax.: (215) 665-8760

Attorneys for Defendant and
Counterclaim-Plaintiff
Unisource Worldwide, Inc.

Dated:  August 14, 2002

## CERTIFICATE OF SERVICE

I, Eliot G. Long, hereby certify that, on this 14th day of August, 2002, I caused a true and correct copy of the foregoing Answer, Affirmative Defenses and Counterclaims to be served on the following by hand delivery:

> Laurence S. Shastel, Esquire
> Rebecca D. Ward, Esquire
> Blank, Rome, Comisky & McCauley LLP
> One Logan Square
> Philadelphia, PA  19103
>
> Attorneys for Plaintiff
> SunGard Recovery Services L.P.

Eliot G. Long

**INDEX 2**

# RECOVERY SERVICES AGREEMENT

## BETWEEN

## SUNGARD RECOVERY SERVICES INC.
### a Pennsylvania corporation
## ("SunGard")

## AND

### UNISOURCE

a ——————————— corporation
## ("Subscriber")

## DATED

_____ SEPTEMBER 1 ___ , 19 __95__

---

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the terms of this Agreement.

**SUNGARD RECOVERY SERVICES INC.**

By: _~Theodore J. Haas~_

Print: **THEODORE J. GAASCHE**

Print Title: **VICE PRESIDENT, CONTROLLER**

Date Signed: _8/25_ , 19 _95_

**UNISOURCE**

By: _Stephen W. Olroyd_

Print Name: _STEPHEN W. OLROYD_

Print Title: _Director of Process & Information_

Date Signed: _August 18_ , 19 _95_

---

*THE TERMS OF THIS AGREEMENT ARE CONFIDENTIAL.*

A. **RECOVERY SERVICES**. Each Schedule to this Agreement specifies a Subscriber location ("Location"), the recovery services to be provided by SunGard to Subscriber for that Location ("Recovery Services"), the fees to be paid by Subscriber to SunGard for those services, and any other applicable terms. Each Schedule represents a separate contract between the parties that incorporates and is governed by all of the terms of this Agreement.

1. **DISASTER**. A "Disaster" is any unplanned event or condition that renders Subscriber unable to use a Location for its intended computer processing and related purposes. By signing a Schedule or any Addendum to a Schedule, Subscriber warrants that the Location specified in that Schedule is not at that time experiencing a Disaster. Subscriber may declare a Disaster by having one of its designated representatives give notice to SunGard stating that a Disaster occurred, identifying the affected Location, specifying which Recovery Services Subscriber believes will be required, and naming another designated representative whom SunGard may immediately contact to verify the Disaster.

2. **SELECTED SERVICES**. Whenever Subscriber declares a Disaster, the Recovery Services to be provided by SunGard to Subscriber shall be the following services which were selected by Subscriber in the applicable Schedule:

(a) **Mobile Recovery Services**. Immediate and exclusive use of the services described below ("Mobile Recovery Services"), which Subscriber may use for the duration of a Disaster:

(i) **Replacement Recovery System**. A fully operational, relocatable computer system and networking capability ("Replacement Recovery System"), equal to or better than (in all material respects including equipment quality and processing capacity) the Mobile Configuration described in the Schedule, to be provided to Subscriber by one of the following methods at Subscriber's option:

a. **Primary Recovery Facility**. Access to the Replacement Recovery System at a SunGard facility where it is then installed.

b. **Alternate Recovery Facility**. Delivery of the Replacement Recovery System to a SunGard facility where it may be accommodated, within 48 hours after SunGard receives the Disaster declaration notice.

c. **Mobile Data Center**. Delivery of a properly equipped vehicle housing the Replacement Recovery System to a destination in the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

d. **Subscriber Facility**. Delivery of the Replacement Recovery System to a properly equipped facility located in the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

(ii) **Computer Space**. Environmentally prepared computer space ("Computer Space"), properly equipped to facilitate the installation of a computer system comparable to the Mobile Configuration, to be provided to Subscriber by one of the following methods at Subscriber's option:

a. **SunGard Facility**. Access to the Computer Space at a SunGard facility where the Replacement Recovery System may be accommodated.

b. **Mobile Coldsite**. Delivery of a properly equipped vehicle housing the Computer Space to a destination in the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

(iii) **Supplemental Office Space**. An adequate and reasonable amount of office space in the same SunGard facility where the Replacement Recovery System or Computer Space is located, properly equipped to facilitate the installation of terminals, which Subscriber may use to operate that Replacement Recovery System or Computer Space.

(iv) **Mobile Work Group Space**. Delivery of a vehicle properly equipped to accommodate the Mobile Work Group Configuration described in the Schedule, to a destination within the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

(v) **Quick Ship Equipment**. Delivery of equipment equal to or better than (in all material respects including equipment quality and processing capacity) the Quick Ship Equipment described in the Schedule, to a properly equipped facility within the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

(b) **Center-Based Recovery Services**. Immediate and exclusive use of the services described below ("Center-Based Recovery Services"), which Subscriber may use during the period of time stated below, provided at a SunGard facility:

(i) **Work Group Space**. An adequate and reasonable amount of office space, properly equipped to accommodate the Work Group Configuration described in the Schedule, which Subscriber may use for six weeks.

(ii) **MegaVoice℠**. SunGard's voice communications backup service for the number of communications ports stated in the Schedule, which Subscriber may use for six weeks.

3. **RECOVERY SUPPORT**. Whenever Subscriber uses Recovery Services during a Disaster, SunGard's Support Staff (consisting of operations, communications, security, transportation, systems software and customer support personnel, as appropriate) shall provide reasonable support to Subscriber on an as needed basis. During a Disaster, SunGard's Support Staff also shall assist Subscriber in contacting vendors and in obtaining and installing additional or replacement equipment.

4. **TESTS**. Subscriber may use certain Recovery Services to test its disaster recovery capability ("Test") for the number of Test Periods stated in the applicable Schedule. Each Test Period entitles Subscriber to eight hours of consecutive test time per year, on a non-cumulative basis. During each Test, SunGard's Support Staff shall provide reasonable supplies and support to Subscriber. All Tests shall be subject to immediate cancellation or termination, and shall be rescheduled as soon as possible, if and when any other subscriber declares a disaster and requests use of the Recovery Services being tested.

5. **HOTLINE**. SunGard shall maintain a toll-free customer support telephone service, on a 24-hour-a-day, 7-day-a-week basis, which Subscriber may use as needed.

6. **USER'S GUIDES**. Subscriber shall receive SunGard's current User's Guides for the Recovery Services and all applicable updates and revisions, as and when issued.

7. **PLANNING SERVICES AND SOFTWARE**. Subscriber may engage SunGard's disaster recovery consultants, at SunGard's then prevailing fees, to prepare and maintain a disaster recovery plan for Subscriber, audit Subscriber's disaster recovery capability, and provide other disaster recovery planning and consulting services. Subscriber may license SunGard's disaster recovery planning software at SunGard's then prevailing fees.

8. **OTHER SERVICES**. Subscriber may obtain any other recovery services offered by SunGard, at SunGard's then prevailing fees, by executing an appropriate Schedule or Addendum describing such services.

2

B. MAINTENANCE AND USE. The terms of this Section B are intended to ensure that the facilities and equipment used by SunGard to provide the Recovery Services ("Recovery Resources") are properly maintained and used, and to protect the respective interests of the parties in using the Recovery Resources.

1. **MAINTENANCE.** SunGard shall maintain vendor-specified proper operating environments at its facilities and in its vehicles used to provide the Recovery Services. SunGard shall adhere to vendor-recommended procedures and policies for proper maintenance of the Recovery Resources, including necessary remedial maintenance and regularly scheduled preventive maintenance. **SunGard warrants to Subscriber that the Recovery Resources shall be maintained in a state of readiness at all times, consistent with SunGard's obligations under this Agreement.**

2. **SIGNIFICANT CHANGES.** SunGard may change the Recovery Resources and shall give written notice to Subscriber at least 60 days before making any significant change that might substantially and adversely impact Subscriber. Subscriber shall then have an adequate and reasonable number of free additional Test Periods to Test the affected Recovery Services. If, in Subscriber's reasonable judgment, any such change substantially and adversely impacts Subscriber to the extent that Subscriber cannot use the affected Recovery Services, then Subscriber may terminate the affected Recovery Services by giving written notice to SunGard within ten days after Subscriber first uses the affected Recovery Services for either a Disaster or Test.

3. **STANDARD PROCEDURES.** SunGard shall maintain reasonable and uniform rules regarding security, safety, scheduling, operations and other procedures for accessing and using the Recovery Resources during disasters and tests. These rules may appear in SunGard's User's Guides and in other written documents provided by SunGard to its subscribers from time to time. Both SunGard and Subscriber shall comply with these rules in all material respects and shall use all Recovery Resources in accordance with manufacturer specifications. Rules for tests may include advance scheduling and cancellation requirements. Any Test Periods cancelled less than 45 days before the scheduled date will be applied against Subscriber's annual allotment of Test Periods.

4. **MOBILE RESOURCES.** Title to all of the Recovery Resources used to provide Mobile Recovery Services ("Mobile Resources"), wherever located, shall remain in SunGard or its supplier, except for any Quick Ship Equipment as to which Subscriber properly exercises its purchase option, if any, described in the applicable Schedule. With respect to any Mobile Resources for which the destination is not a SunGard facility, (a) Subscriber shall obtain or provide, at Subscriber's expense, all permits, landlord consents and other authorizations, and all communications, power and other utility lines and equipment, needed to possess, locate, or use the Mobile Resources at that destination, (b) Subscriber shall be responsible for the security of the Mobile Resources at that destination, (c) Subscriber shall not relocate the Mobile Resources without SunGard's prior written consent which will not be unreasonably withheld, (d) when Subscriber's use or right to use the Mobile Resources during a Disaster or Test ends, Subscriber shall comply with SunGard's return delivery or shipment instructions, and (e) if the Mobile Resources do not include a SunGard vehicle, then Subscriber shall provide a proper operating environment for the Mobile Resources. If any Mobile Resources are provided by a third party under contract with SunGard and that contract is terminated, then SunGard may terminate the applicable Recovery Services upon 90 days prior written notice to Subscriber.

C. **MULTIPLE DISASTER.** Subscriber's rights of immediate and exclusive use of the Recovery Resources, as provided in Section A2, shall be subject to the possibility that one or more other subscribers ("other affected subscribers") could declare a disaster and require use of the same Recovery Resources at the same time as Subscriber ("Multiple Disaster").

1. **MULTIPLE DISASTER PROCEDURES FOR MOBILE RESOURCES.** If a Multiple Disaster occurs, then the following procedures shall be implemented with respect to Mobile Resources:

   (a) The first subscriber who declares a disaster, as determined by SunGard's receipt of written disaster declaration notices, shall have immediate and exclusive use of the applicable Mobile Resources.

   (b) If the applicable Mobile Resources are being used by another affected subscriber who previously declared a disaster, then Subscriber shall be provided immediate and exclusive use of other compatible Mobile Resources.

   (c) If all other compatible Mobile Resources also are being used by other affected subscribers who previously declared disasters, then Subscriber shall be provided exclusive use of the first compatible Mobile Resources that become available.

   (d) Subscriber shall cooperate with SunGard and the other affected subscribers in coordinating the use of the Mobile Resources and in implementing any other plans for supporting the Multiple Disaster.

2. **GENERAL MULTIPLE DISASTER PROCEDURES.** If a Multiple Disaster occurs, then the following procedures shall be implemented with respect to all Recovery Resources other than Mobile Resources:

   (a) Subscriber and the other affected subscribers shall have equal rights of access to and use of the Recovery Resources, irrespective of the order in which disasters occurred or were declared.

   (b) In an effort to avoid the need for shared or allocated use of any Recovery Resources, SunGard shall, to the fullest extent possible under the circumstances, take full advantage of, and provide access to, all of its other available Recovery Resources.

   (c) If shared or allocated use of any Recovery Resources is necessary, then SunGard shall develop and implement an appropriate plan ("Multiple Disaster Plan") providing for the sharing or allocation of those Recovery Resources in a manner reasonably determined by SunGard. If Subscriber and the other affected subscribers unanimously agree upon their own Multiple Disaster Plan, then SunGard shall implement that plan to the fullest extent possible under the circumstances.

   (d) Subscriber shall cooperate with SunGard and the other affected subscribers in coordinating the use of the Recovery Resources and, if necessary, in implementing a Multiple Disaster Plan.

3. **MULTIPLE DISASTER PROTECTION.** To lower the probability of a Multiple Disaster, SunGard shall comply with the following terms:

   (a) **No other subscriber shall be granted any greater rights of access to or use of the Recovery Resources than are granted to Subscriber under this Agreement.**

   (b) **No agreement to provide use of any Recovery Resources shall be entered into at a time when the subscriber location to be serviced is then currently experiencing a disaster.**

4. **CRISIS MANAGEMENT.** Whenever SunGard learns of an approaching storm or other situation that might cause a Multiple Disaster, SunGard shall monitor the situation and use commercially reasonable efforts to coordinate contingency plans with all potentially affected subscribers.

1. **CONTRACT TERM.** This Agreement shall continue in effect for so long as there is a Schedule in effect. The term of a Schedule, and Subscriber's rights to use the Recovery Services selected on that Schedule, shall begin on the Commencement Date and continue in effect for the Agreed Term stated in that Schedule. Thereafter, that Schedule shall automatically renew for successive renewal terms of equal duration to the Agreed Term, unless either party gives written notice of termination to the other at least three months before the end of the then current term.

   If Subscriber plans to convert its processing environment to a new processing environment, then at least 3 months before the conversion is complete Subscriber will notify SunGard in writing of the new technology in reasonable detail and the expected date of conversion. SunGard will then notify Subscriber in writing if SunGard provides, or will provide by the conversion date, Recovery Services for the new technology, and the affected Schedule will continue in effect and the configuration will be changed, in a mutually acceptable manner, to include the new technology at SunGard's then prevailing Monthly Fees therefor. Otherwise, Subscriber may cancel the affected Schedule by giving SunGard written notice of cancellation accompanied by a payment equal to 10% of the Monthly Fees remaining between the effective date of cancellation and the date the Schedule would have otherwise expired.

2. **FEES AND EXPENSES.** All Monthly Fees shall be invoiced by SunGard in advance. All other fees, and any out-of-pocket expenses reasonably incurred by SunGard on behalf of Subscriber and with prior authorization, shall be invoiced by SunGard as and when incurred. Subscriber's payments shall be due within 30 days after receipt of invoice. Subscriber shall be responsible for (a) any applicable Disaster Fees as indicated on a Schedule, (b) all communications and similar third party charges resulting from Subscriber's use of the Recovery Resources, (c) all power, fuel and other utility charges resulting from Subscriber's use of the Recovery Resources, (d) all costs associated with the transportation, delivery, operation and ongoing support of Mobile Resources used by Subscriber, (e) all costs associated with the installation and de-installation of Mobile Resources used by Subscriber at non-SunGard locations, and (f) any sales, use, excise or comparable taxes assessed or imposed upon the services provided or the amounts charged under this Agreement. Beginning one year after the Commencement Date of a Schedule, SunGard may increase all fees chargeable under that Schedule by up to 5% per contract year, by giving Subscriber at least 90 days prior written notice.

3. **CONFIDENTIALITY.** All information disclosed by one party to the other in connection with this Agreement shall be treated as confidential information unless it is or becomes publicly available through no fault of the other party, is already known to the other party, or is later rightfully obtained by the other party from independent sources. Each party's confidential information shall be held in strict confidence by the other party, using the same standard of care as it uses to protect its own confidential information, and shall not be used or disclosed by the other party for any purpose except as necessary to implement or perform this Agreement. Without limiting the generality of the foregoing, such confidential information includes (a) Subscriber's data and software, and the details of Subscriber's computer operations and recovery procedures, which include trade secrets of Subscriber, (b) SunGard's physical security systems, access control systems, specialized recovery equipment and techniques, pricing and User's Guides, which include trade secrets of SunGard, and (c) the terms of this Agreement. This Section D3 may be enforced by injunction.

4. **LIABILITY AND INDEMNIFICATION.** Each party ("liable party") shall be fully liable to the other party for any direct damages caused by any breach of contract, negligence or willful misconduct of the liable party (or any of its employees or agents) in connection with the use of the Recovery Resources or any other matter relating to this Agreement. The liable party shall indemnify and hold harmless the other party (and its affiliates and their respective employees and agents) against any claims, actions, damages, losses or liabilities to the extent arising from any such breach of contract, negligence or willful misconduct of the liable party (or any of its employees or agents). Notwithstanding the foregoing, SunGard shall have no liability for any of Subscriber's property located at a SunGard facility or in a SunGard vehicle, except for any direct damages caused by SunGard's gross negligence or willful misconduct. Subscriber shall indemnify and hold harmless SunGard (and its affiliates and their respective employees and agents) against any claims, actions, damages, losses or liabilities to the extent arising from the use, control or possession of any Mobile Resources by Subscriber (or any of its employees or agents). Excluding Subscriber's payment obligations, under no circumstances shall either party be liable for lost revenues, lost profits, loss of business, or consequential or special damages of any nature, whether or not foreseeable.

EXCEPT AS SPECIFICALLY STATED IN THIS AGREEMENT, SUNGARD MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR CONFORMITY TO ANY REPRESENTATION OR DESCRIPTION.

5. **FORCE MAJEURE.** Neither party shall be liable for, nor shall either party be considered in breach of this Agreement due to, any failure to perform its obligations under this Agreement as a result of a cause beyond its control, including any natural calamity, act of God or a public enemy, act of any military, civil or regulatory authority, change in any law or regulation, disruption or outage of communications, power or other utility, failure to perform by any supplier or other third party, or other cause which could not have been prevented with reasonable care. If, due to any such cause, SunGard is unable to provide to Subscriber a material part of the Recovery Services described in a Schedule and this inability continues for a period of more than 30 days, then the Monthly Fees for those Recovery Services for that period shall be waived and the term of that Schedule shall be extended by an equal period. If this inability continues for more than five days after Subscriber has declared a Disaster, then Subscriber may terminate that Schedule, without penalty, by giving written notice of termination to SunGard at any time before the inability ends.

6. **TERMINATION FOR CAUSE.** If either party breaches any of its obligations under this Agreement in any material respect and the breach is not substantially cured within the cure period specified below, then the other party may terminate this Agreement or any Schedule(s), without penalty, by giving written notice to the breaching party at any time before the breach is substantially cured. With respect to a breach of SunGard's obligation to provide the Recovery Services to Subscriber during a Disaster, the cure period shall be five days. With respect to Subscriber's payment obligations, the cure period shall be ten days after receipt of SunGard's written notice of non-payment. With respect to all other obligations under this Agreement, the cure period shall be 30 days after receipt of written notice describing the breach, provided that, if a longer period is reasonably required to cure the breach and the cure is promptly begun, such cure period shall be extended for as long as the cure is being diligently prosecuted to completion.

7. **NOTICE.** All notices, consents and other communications under this Agreement shall be in writing and shall be deemed to have been received on the earlier of the date of actual receipt or the third business day after being sent by first class mail. Any notice may be given by facsimile, and Disaster declaration notice may be given orally, provided that, in either case, a signed written confirmation is received within 24 hours thereafter. Subscriber's address for notice is stated in each Schedule. SunGard's address for notice is 1285 Drummers Lane, Wayne, Pennsylvania, 19087, Attention: Contract Administration.

8. **ENTIRE UNDERSTANDING.** This Agreement (which includes and incorporates all Schedules and Addenda to this Agreement) states the entire understanding between the parties with respect to its subject matter, and supersedes all prior proposals, negotiations and other written or oral communications between the parties with respect to the subject matter of this Agreement. No modification of this Agreement, and no waiver of any breach of this Agreement, shall be effective unless in writing and signed by an authorized representative of the party against whom enforcement is sought. No waiver of any breach of this Agreement, and no course of dealing between the parties, shall be construed as a waiver of any subsequent breach of this Agreement.

9. **PARTIES IN INTEREST.** Neither party may assign any of its rights or obligations under this Agreement without the prior written consent of the other party which will not be unreasonably withheld. This Agreement shall bind, benefit and be enforceable by and against both parties and their respective successors and consented-to assigns. No third party shall be considered a beneficiary of this Agreement or entitled to any rights under this Agreement.

10. **CONSTRUCTION. THIS AGREEMENT SHALL BE GOVERNED BY SUBSTANTIVE PENNSYLVANIA LAW.** In any action relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and court costs from the other party. A determination that any term of this Agreement is invalid or unenforceable shall not affect the other terms of this Agreement. Section headings are for convenience of reference only and shall not affect the interpretation of this Agreement. The relationship between the parties created by this Agreement is that of independent contractors, and not partners, joint venturers or agents. Sections D3, D4 and D10 shall survive any termination of this Agreement.

©1994, SunGard Recovery Services Inc., all rights reserved (CORA-0994)

SUNGARD® Recovery Services Inc.

SCHEDULE _A_ GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 1 of _2_

| SELECTED SERVICES: | Included Yes / No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| (a) Mobile Recovery Services: | | | | |
| (I) Replacement Recovery System: | _Yes_ | Four (4) | $ 0 | $ 1,250.00 * |
| Delivery Method(s) Selected: | Primary Recovery Facility/Alternate Recovery Facility/Mobile Data Center/Subscriber Site | | | |
| (ii) Computer Space: | _No_ | _N/A_ | $ 0 | $ 0 * |
| Delivery Method(s) Selected: | | | | |
| (iii) Supplemental Office Space: | _Yes_ | _N/A_ | $ 0 | $ Included |
| (iv) Mobile Work Group Space: | _No_ | _N/A_ | $ 0 | $ N/A * |
| (v) Quick Ship Equipment: | _No_ | _N/A_ | $ 0 | $ 0 |
| (b) Center-Based Recovery Services: | | | | |
| (i) Work Group Space: | _No_ | _N/A_ | $ 0 | $ 0 |
| (ii) MegaVoice℠: | _No_ | _N/A_ | $ 0 | $ 0 |

* Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

Agreed Term:___12___ months

Commencement Date:_____SEPTEMBER 1, 19_95_            Monthly Fee:_____$3,815.00_

Subscriber's Location:_____10143 Paget Drive, St. Louis, MO  63132_____

Send Subscriber Notices to:___Same as above.  Attn:  Mr. Dale Schwartz_____

Send Subscriber Invoices to:___Same as above._____

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

SUNGARD RECOVERY SERVICES INC.                     SUBSCRIBER:_____unisource_____

BY:_____                          BY:_____

PRINT NAME:___THEODORE J. GAASCHE___               PRINT NAME:__Stephen W. Clayd___

PRINT TITLE:___VICE PRESIDENT, CONTROLLER___       PRINT TITLE:_Director of Process & Information_

DATE SIGNED:_____2/25, 19_95_               DATE SIGNED:__August 18____, 19_95_

SRC-567a.doc\cav

THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.

SCHEDULE_A_GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____SEPTEMBER 1, 1995_____
Page 2 of _2_

| Quantity | Description |
|---|---|
| | |

MOBILE CONFIGURATION:

| Quantity | Description |
|---|---|
| 1 | AS/400 Model 310-2044 Service Level, 20.2 RPR, 256 Megs |
| 31 | Gigabytes of DASD |
| 1 | 3490-C11 Tape Drive, 36 Tracks, IDRC |
| 1 | 9348 Tape Drive, 1600/6250 bpi |
| 1 | Line Printer, 1200 lpm |
| 12 | 3196 or equivalent Terminals |
| 2 | 6x40 Twinax Workstation Controllers |
| 28 | RS232 Communication Ports |
| 1 **** | ISDN BRI with 2 Bearer Channels (St. Louis) |
| 1 **** | ISDN BRI with 2 Bearer Channels (Chicago) |
| 1 **** | Codex UTA 220 |
| 28/56 | SunNet III Modems, 14.4 kbps |
| 1 | QuickShip 22004 AN Wellfleet Router |
| 1 | Ethernet Adapter |
| 6 | Analog Dial Lines |
| 1 | Mobile Diesel Generator (50KW (62.5 KVA)@ 60 HZ) |

**** To be provided to Subscriber at the Primary or Alternate Recovery Facility only and will be governed by the General Multiple Disaster Procedures, in the event of a Multiple Disaster.

This Agreement replaces and supersedes, in its entirety, the previous Agreement between SunGard Recovery Services Inc. ("SunGard") (pursuant to an Asset Acquisition Agreement dated as of September 1, 1993 whereby SunGard acquired substantially all of the assets of Sun Data Inc.'s disaster recovery business) and Subscriber, dated September 1, 1993.

---

**THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.**

SCHEDULE_B_GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 1 of 2

| SELECTED SERVICES: | Included Yes / No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| (a) Mobile Recovery Services: | | | | |
| (I) Replacement Recovery System: | No | N/A | $ 0 | $ 0 * |
| Delivery Method(s) Selected: | | | | |
| (ii) Computer Space: | No | N/A | $ 0 | $ 0 * |
| Delivery Method(s) Selected: | | | | |
| (iii) Supplemental Office Space: | No | N/A | $ 0 | $ N/A |
| (iv) Mobile Work Group Space: | No | N/A | $ 0 | $ N/A * |
| (v) Quick Ship Equipment: | Yes | N/A | See Configuration | See Configuration |
| (b) Center-Based Recovery Services: | | | | |
| (i) Work Group Space: | Yes | N/A | $ 2,500.00 | $ 500.00 |
| (ii) MegaVoice™: | Yes | N/A | $ 2,500.00 | $ 500.00 |

* Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

Agreed Term: __12__ months
Commencement Date: ___SEPTEMBER 1___, 19_95_           Monthly Fee: __$850.00__
Subscriber's Location: ___10143 Paget Drive, St. Louis, MO 63132___
Send Subscriber Notices to: __Same as above.  Attn:  Mr. Dale Schwartz__
Send Subscriber Invoices to: __Same as above.__

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

SUNGARD RECOVERY SERVICES INC.                SUBSCRIBER: ___unisource___
BY: _____                BY: _____
PRINT NAME: THEODORE J. GAASCHE              PRINT NAME: STEPHEN W OLROYD
PRINT TITLE: VICE PRESIDENT, CONTROLLER      PRINT TITLE: Director of Process & Information
DATE SIGNED: ___8/25, 19 95___               DATE SIGNED: ___August 18___, 19 95

SRC-567b.doc\cav

THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.

SCHEDULE_B_GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 2 of _2_

| Quantity | Description |
|---|---|

**QUICK SHIP EQUIPMENT:  * * ***

| | |
|---|---|
| 10 | Workstations:  (486/66 Mhz, 16 MB RAM, 250 MB Hard Disk, VGA Color Monitor, Keyboard, Mouse) |
| 3 | HP compatible Laser Printers, Parallel or Serial Interface |

**WORKGROUP CONFIGURATION:**

| | |
|---|---|
| 1 | MetroCenter Facility Access |
| 1 | Access to Copier and Facsimile |
| 50 | Furnished Work Positions, Wired, Phone Handsets |

**MEGAVOICE CONFIGURATION:**

| | |
|---|---|
| 50**** | Voice Grade Lines |
| 50**** | MegaVoice Ports |

**QUICK SHIP EQUIPMENT DISASTER FEES:**

| Declaration | Daily Usage * |
|---|---|
| $50 per Workstation | $50 per Workstation per day ** |
| $50 per Printer | $21 per Printer per day ** |

* Minimum of thirty (30) days usage is required.

** Purchase Option

Subscriber may purchase this equipment after it is delivered to Subscriber by giving written notice to SunGard at any time before the equipment is returned to SunGard.  The purchase price will be SunGard's then prevailing purchase option price for this type of equipment.  Daily Usage fees previously paid for this equipment may be applied toward the purchase price.

*** Non-testable

**** To be provided to Subscriber at the Primary or Alternate Recovery Facility only and will be governed by the General Multiple Disaster Procedures, in the event of a Multiple Disaster.

**THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.**

SUNGARD™ Recovery Services Inc.

SCHEDULE _C_ GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 1 of _2_

| SELECTED SERVICES: | Included Yes / No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| (a) Mobile Recovery Services: | | | | |
| (i) Replacement Recovery System: | _No_ | _N/A_ | $ 0 | $ 0 * |
| Delivery Method(s) Selected: | | | | |
| (ii) Computer Space: | _No_ | _N/A_ | $ 0 | $ 0 * |
| Delivery Method(s) Selected: | | | | |
| (iii) Supplemental Office Space: | _No_ | _N/A_ | $ 0 | $ N/A |
| (iv) Mobile Work Group Space: | _No_ | _N/A_ | $ 0 | $ N/A * |
| (v) Quick Ship Equipment: | _Yes_ | _N/A_ | See Configuration | See Configuration |
| (b) Center-Based Recovery Services: | | | | |
| (i) Work Group Space: | _Yes_ | _N/A_ | $ 2,500.00 | $ 500.00 |
| (ii) MegaVoice™: | _Yes_ | _N/A_ | $ 2,500.00 | $ 500.00 |

* Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

Agreed Term: __12__ months
Commencement Date: ____ SEPTEMBER 1 _____, 19_95_      Monthly Fee: ____ $1,030.00 _____
Subscriber's Location: _____ 850 N Arlington Heights Road, Itasca, IL  60143
Send Subscriber Notices to: ___ Same as above.  Attn:  Ms. Carolle Fitzpatrick
Send Subscriber Invoices to: ___ Same as above.

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

SUNGARD RECOVERY SERVICES INC.                 SUBSCRIBER: ___ unisource
BY: _Theodore J. Gaasche_                       BY: _Stephen W. Olroyd_
PRINT NAME: __THEODORE J. GAASCHE__             PRINT NAME: _STEPHEN W. OLROYD_
PRINT TITLE: __VICE PRESIDENT, CONTROLLER__     PRINT TITLE: _Director of Process & Information_
DATE SIGNED: _____ 8/25 , 19_95_             DATE SIGNED: _August 18_ , 19_95_

SRC-567c.doc\cav   (August 16, 1995)

THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.

SCHEDULE _C_ GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 2 of _2_

| Quantity | Description |
|---|---|

**QUICK SHIP EQUIPMENT:** * * *

| | |
|---|---|
| 10 | Workstations: (486/66 Mhz, 16 MB RAM, 250 MB Hard Disk, VGA Color Monitor, Keyboard, Mouse) |
| 3 | HP compatible Laser Printers, Parallel or Serial Interface |

**WORKGROUP CONFIGURATION:**

| | |
|---|---|
| 1 | MetroCenter Facility Access |
| 1 | Access to Copier and Facsimile |
| 50 | Furnished Work Positions, Wired, Phone Handsets |
| 1 | 5394 compatible Controller, 16 ports, with Modem |
| 5 | SunNet III Modems, 14.4 kbps |

**MEGAVOICE CONFIGURATION:**

| | |
|---|---|
| 50 * * * * | Voice Grade Lines |
| 50 * * * * | MegaVoice Ports |

**QUICK SHIP EQUIPMENT DISASTER FEES:**

| Declaration | Daily Usage * |
|---|---|
| $50 per Workstation | $50 per Workstation per day * * |
| $50 per Printer | $21 per Printer per day * * |

* Minimum of thirty (30) days usage is required.

* * Purchase Option

Subscriber may purchase this equipment after it is delivered to Subscriber by giving written notice to SunGard at any time before the equipment is returned to SunGard. The purchase price will be SunGard's then prevailing purchase option price for this type of equipment. Daily Usage fees previously paid for this equipment may be applied toward the purchase price.

* * * Non-testable

* * * * To be provided to Subscriber at the Primary or Alternate Recovery Facility only and will be governed by the General Multiple Disaster Procedures, in the event of a Multiple Disaster.

THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.

SUNGARD® Recovery Services Inc.

SCHEDULE A GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 1 of 2

| SELECTED SERVICES: | Included Yes / No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| **(a) Mobile Recovery Services:** | | | | |
| (i) Replacement Recovery System: | Yes | Four (4) | $ 0 | $ 1,250.00 * |
| Delivery Method(s) Selected: | Primary Recovery Facility/Alternate Recovery Facility/Mobile Data Center/Subscriber Site | | | |
| (ii) Computer Space: | No | N/A | $ 0 | $ 0 * |
| Delivery Method(s) Selected: | | | | |
| (iii) Supplemental Office Space: | Yes | N/A | $ 0 | $ Included |
| (iv) Mobile Work Group Space: | No | N/A | $ 0 | $ 0 * |
| (v) Quick Ship Equipment: | No | N/A | $ 0 | $ 0 |
| **(b) Center-Based Recovery Services:** | | | | |
| (i) Work Group Space: | No | N/A | $ 0 | $ 0 |
| (ii) MegaVoice℠: | No | N/A | $ 0 | $ 0 |

\* Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

◎ This Schedule replaces and supersedes the previous Schedule A having a Commencement Date of September 1, 1995.

Agreed Term: ___12___ months

Commencement Date: _____ SEPTEMBER 1 ___, 19 _96_      Monthly Fee: _____ $4,006.00 _____

Subscriber's Location: _____ 10143 Paget Drive, St. Louis, MO 63132 _____

Send Subscriber Notices to: __ Same as above. Attn: Mr. Dale Schwartz _____

Send Subscriber Invoices to: __ Same as above. _____

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

SUNGARD RECOVERY SERVICES INC.      SUBSCRIBER: _____ unisource _____

BY: _Donald M. O'Brien_      BY: _John W. Cloyd_

**DONALD M. O'BRIEN**

PRINT NAME: _____      PRINT NAME: _St. John W. Cloyd_

PRINT TITLE: **CONTRACTS OFFICER**      PRINT TITLE: _Director of Information Systems_

DATE SIGNED: _7/31_ , 19 _96_      DATE SIGNED: _July 29_ , 19 _96_

SRC-567.doc\cav (Revised July 23, 1996)

> **THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.**

SCHEDULE_A_GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 2 of _2_

| Quantity | Description |
|---|---|
| MOBILE CONFIGURATION: | |
| 1 | AS/400 Model 310-2044 Service Level, 20.2 RPR, 256 Megs |
| 31 | Gigabytes of DASD |
| 1 | 3490-C11 Tape Drive, 36 Tracks, IDRC |
| 1 | 9348 Tape Drive, 1600/6250 bpi |
| 1 | Line Printer, 1200 lpm |
| 12 | 3196 or equivalent Terminals |
| 2 | 6x40 Twinax Workstation Controllers |
| 28 | RS232 Communication Ports |
| 1 ▼ | ISDN BRI with 2 Bearer Channels (St. Louis) |
| 1 ▼ | ISDN BRI with 2 Bearer Channels (Chicago) |
| 1 ▼ | Codex UTA 220 |
| 28/56 | SunNet III Modems, 14.4 kbps |
| 1 | QuickShip 22004 AN Wellfleet Router |
| 1 | Ethernet Adapter |
| 6 ▼ | Analog Dial Lines |
| 1 | Mobile Diesel Generator (50KW (62.5 KVA)@ 60 HZ) |

▼  To be provided to Subscriber at the Primary or Alternate Recovery Facility only and will be governed by the General Multiple Disaster Procedures, in the event of a Multiple Disaster.

THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.

**SUNGARD® Recovery Services Inc.**

SCHEDULE_B_GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 1 of _2_

| SELECTED SERVICES: | Included Yes / No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| **(a) Mobile Recovery Services:** | | | | |
| (i) Replacement Recovery System: | Yes | One(1) | $ 0 | $ 1,250.00 * |
| Delivery Method(s) Selected: | Primary Recovery Facility/Alternate Recovery Facility/Mobile Data Center/Subscriber Site | | | |
| (ii) Computer Space: | No | N/A | $ 0 | $ 0 • |
| Delivery Method(s) Selected: | N/A | | | |
| (iii) Supplemental Office Space: | No | N/A | $ 0 | $ 0 |
| (iv) Mobile Work Group Space: | No | N/A | $ 0 | $ 0 • |
| (v) Quick Ship Equipment: | Yes | N/A | See Configuration | See Configuration |
| **(b) Center-Based Recovery Services:** | | | | |
| (i) Work Group Space: | Yes | One (1) | $ 2,500.00 | $ 500.00 |
| (ii) MegaVoice℠: | Yes | One (1) | $ 2,500.00 | $ 500.00 |

* Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

☉ This Schedule replaces and supersedes the previous Schedule B having a Commencement Date of September 1, 1995.

Agreed Term: __12__ months

Commencement Date: _____ SEPTEMBER 1 _____, 19_96_     Monthly Fee: ____$1,338.00____

Subscriber's Location: _____ 10143 Paget Drive, St. Louis, MO  63132 _____

Send Subscriber Notices to: __ Same as above.  Attn:  Mr. Dale Schwartz ___

Send Subscriber Invoices to: __ Same as above. ___

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

SUNGARD RECOVERY SERVICES INC.          SUBSCRIBER: __unisource__

BY: _____            BY: _____

PRINT NAME: __DONALD M. O'BRIEN__        PRINT NAME: _____

PRINT TITLE: __CONTRACTS OFFICER__       PRINT TITLE: _____

DATE SIGNED: _____ 7/5 , 19 96        DATE SIGNED: ____ July 29 , 19 96

SRC-567.doc\cav  (Revised  July 24, 1996)

**THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.**

SCHEDULE_B_GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 2 of _2_

| Quantity | Description |
|---|---|

**MOBILE CONFIGURATION:**

| | |
|---|---|
| 3 | PC's:  486/66 Mhz, 16 MB RAM, 540 MB Hard Disk, 3.5" Floppy, Ethernet, VGA Color Monitor, Keyboard, Mouse |
| 1 | Printer: HP compatible Laser Printers, Parallel or Serial Interface |

**QUICK SHIP EQUIPMENT:  \*\*\***

| | |
|---|---|
| 47 | Workstations:  (486/66 Mhz, 16 MB RAM, 540 MB Hard Disk, 3.5" Floppy, Ethernet, VGA Color Monitor, Keyboard, Mouse) |
| 14 | HP compatible Laser Printers, Parallel or Serial Interface |

**WORKGROUP CONFIGURATION:**

| | |
|---|---|
| 1 | MetroCenter Facility Access |
| 1 | Access to Copier and Facsimile |
| 50 | Furnished Work Positions, Wired, Phone Handsets |

**MEGAVOICE CONFIGURATION:**

| | |
|---|---|
| 50\*\*\*\* | Voice Grade Lines |
| 50\*\*\*\* | MegaVoice Ports |

**QUICK SHIP EQUIPMENT DISASTER FEES:**

| Declaration | Daily Usage \* |
|---|---|
| $50 per Workstation | $50 per Workstation per day \*\* |
| $50 per Printer | $21 per Printer per day \*\* |

\*  Minimum of thirty (30) days usage is required.

\*\* Purchase Option

Subscriber may purchase this equipment after it is delivered to Subscriber by giving written notice to SunGard at any time before the equipment is returned to SunGard.  The purchase price will be SunGard's then prevailing purchase option price for this type of equipment.  Daily Usage fees previously paid for this equipment may be applied toward the purchase price.

\*\*\* Non-testable

\*\*\*\* To be provided to Subscriber at the Primary or Alternate Recovery Facility only and will be governed by the General Multiple Disaster Procedures, in the event of a Multiple Disaster.

*THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.*

**SUNGARD® Recovery Services Inc.**

SCHEDULE  C  GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 1 of  2

| SELECTED SERVICES: | Included Yes / No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| **(a)** Mobile Recovery Services: | | | | |
| (i)  Replacement Recovery System: | Yes | One (1) | $ 0 | $ 1,250.00  * |
| Delivery Method(s) Selected: | Primary Recovery Facility/Alternate Recovery Facility/Mobile Data Center/Subscriber Site | | | |
| (ii)  Computer Space: | No | N/A | $ 0 | $ 0  * |
| Delivery Method(s) Selected: | N/A | | | |
| (iii)  Supplemental Office Space: | No | N/A | $ 0 | $ 0 |
| (iv)  Mobile Work Group Space: | No | N/A | $ 0 | $ 0  * |
| (v)  Quick Ship Equipment: | Yes | N/A | See Configuration | See Configuration |
| **(b)** Center-Based Recovery Services: | | | | |
| (i)  Work Group Space: | Yes | One (1) | $ 2,500.00 | $ 500.00 |
| (ii)  MegaVoice℠: | Yes | One (1) | $ 2,500.00 | $ 500.00 |

* Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

⊙ This Schedule replaces and supersedes the previous Schedule C having a Commencement Date of September 1, 1995.

Agreed Term: ___12___ months

Commencement Date: _____ SEPTEMBER 1 _____, 19_96_          Monthly Fee: _____ $1,527.00 _____

Subscriber's Location: _____ 850 N Arlington Heights Road, Itasca, IL  60143 _____

Send Subscriber Notices to: ___ Same as above.   Attn:  Ms. Carolle Fitzpatrick ___

Send Subscriber Invoices to: ___ Same as above. ___

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

SUNGARD RECOVERY SERVICES INC.                          SUBSCRIBER:  ___ unisource ___

BY: _Donald M. O'Brien_                                 BY: _Donald C. Clough_

**DONALD M. O'BRIEN**                                   PRINT NAME: _Donald C. Clough_

PRINT NAME: _____                            PRINT TITLE: _Director of Information Systems_

**CONTRACTS OFFICER**

PRINT TITLE: _____

DATE SIGNED: _____ 7/31 _____, 19_96_                 DATE SIGNED: _July 24_, 19_96_

SRC-567c.doc\cav  (Revised  July 24, 1996)

---

**THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.**

SCHEDULE _C_ GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED _____ SEPTEMBER 1, 1995 _____
Page 2 of _2_

| Quantity | Description |
|---|---|
| **MOBILE CONFIGURATION:** | |
| 3 | PC's:  486/66 Mhz, 16 MB RAM, 540 MB Hard Disk, 3.5" Floppy, Ethernet, VGA Color Monitor, Keyboard, Mouse |
| 1 | Printer: HP compatible Laser Printers, Parallel or Serial Interface |
| 1 | 5394 compatible Controller, 16 ports, with Modem |
| 5 | SunNet III Modems, 14.4 kbps |
| **QUICK SHIP EQUIPMENT:  \*\*\*** | |
| 47 | Workstations:  (486/66 Mhz, 16 MB RAM, 540 MB Hard Disk, 3.5" Floppy, Ethernet, VGA Color Monitor, Keyboard, Mouse) |
| 14 | HP compatible Laser Printers, Parallel or Serial Interface |
| **WORKGROUP CONFIGURATION:** | |
| 1 | MetroCenter Facility Access |
| 1 | Access to Copier and Facsimile |
| 50 | Furnished Work Positions, Wired, Phone Handsets |
| **MEGAVOICE CONFIGURATION:** | |
| 50\*\*\*\* | Voice Grade Lines |
| 50\*\*\*\* | MegaVoice Ports |

**QUICK SHIP EQUIPMENT DISASTER FEES:**

| Declaration | Daily Usage \* |
|---|---|
| $50 per Workstation | $50 per Workstation per day \*\* |
| $50 per Printer | $21 per Printer per day \*\* |

\*  Minimum of thirty (30) days usage is required.

\*\* Purchase Option

Subscriber may purchase this equipment after it is delivered to Subscriber by giving written notice to SunGard at any time before the equipment is returned to SunGard.  The purchase price will be SunGard's then prevailing purchase option price for this type of equipment.  Daily Usage fees previously paid for this equipment may be applied toward the purchase price.

\*\*\* Non-testable

\*\*\*\* To be provided to Subscriber at the Primary or Alternate Recovery Facility only and will be governed by the General Multiple Disaster Procedures, in the event of a Multiple Disaster.

*THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.*

## SCHEDULE A-1 GOVERNED BY
## RECOVERY SERVICES AGREEMENT DATED SEPTEMBER 1,1995
### Page 1 of 2

| SELECTED SERVICES: | Included Yes/No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| **Mobile Recovery Services:** | | | | |
| (i)  Replacement Recovery System: | YES | Four (4) | $0 | $1,250.00* |
| Delivery Method(s) Selected: | Primary Recovery Facility/Alternate Recovery Facility/Mobile Data Center/Subscriber Site | | | |
| (ii)  Computer Space: | NO | N/A | $0 | $0* |
| Delivery Method(s) Selected: | N/A | | | |
| (iii)  Supplemental Office Space: | YES | N/A | $0 | $Included |
| (iv)  Mobile Work Group Space: | NO | N/A | $0 | $0* |
| (v)  Quick Ship Equipment: | NO | N/A | $0 | $0 |
| **Center Based Recovery Services:** | | | | |
| Work Group Space: | NO | N/A | $0 | $0 |
| MegaVoice℠: | NO | N/A | $0 | $0 |

*Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

This Schedule replaces and supersedes the previous Schedule A having a Commencement Date of September 1, 1996.
Agreed Term: _____ **36** months

Commencement Date: _____ **February 1** , 19<u>97</u>        Monthly Fee: _____ **$4,060.00**

Subscriber's Location: _____ **unisource, Attn: Dale Schwartz, 10143 Paget Drive, St. Louis, MO  63132**

Send Subscriber Notices to: _____ **Same as above**

Send Subscriber Invoices to: _____ **Same as above**

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

**SUNGARD RECOVERY SERVICES INC.**                    **SUBSCRIBER:** unisource

By: _____                    By: _____

Print: _____                    Print: _____

Print Title:  SR. VICE PRESIDENT                    Print Title: _____

Date Signed:  3/4/97                    Date Signed: _____

| THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL. |
|---|

unisource

SCHEDULE A-2 GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED SEPTEMBER 1,1995
Page 1 of 2

| SELECTED SERVICES: | Included Yes/No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| **Mobile Recovery Services:** | | | | |
| (i)  Replacement Recovery System: | YES | Four (4) | $0 | $1,250.00* |
| Delivery Method(s) Selected: | Primary Recovery Facility/Alternate Recovery Facility/Mobile Data Center/Subscriber Facility | | | |
| (ii)  Computer Space: | NO | N/A | $0 | $0* |
| Delivery Method(s) Selected: | N/A | | | |
| (iii) Supplemental Office Space: | YES | N/A | $0 | $Included |
| (iv) Mobile Work Group Space: | NO | N/A | $0 | $0* |
| (v)  Quick Ship Equipment: | NO | N/A | $0 | $0 |
| **Center Based Recovery Services:** | | | | |
| Work Group Space: | NO | N/A | $0 | $0 |
| MegaVoice$^{SM}$: | NO | N/A | $0 | $0 |

*Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

This Schedule replaces and supersedes the previous Schedule A having a Commencement Date of February 1, 1997.

Agreed Term:    **X    Coterminous with previous Schedule**

Commencement Date:                         **July 1** , 19**97**          Monthly Fee:          **$4,060.00**

Subscriber's Location:          **unisource, Attn: Dale Schwartz, 10143 Paget Drive, St. Louis, MO  63132**

Send Subscriber Notices to:     **Same as above**

Send Subscriber Invoices to:     **Same as above**

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

**SUNGARD RECOVERY SERVICES INC.**          **SUBSCRIBER:**   unisource

By:   _(signature)_                              By:   _____

Print:      Edward P. Vince                       Print:   _____

Print Title:    V.P. Sales, Midwest Region        Print Title:   _____

Date Signed:      7-25-97                          Date Signed:   _____

*THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.*

unisource

**SCHEDULE A-2 GOVERNED BY**
**RECOVERY SERVICES AGREEMENT DATED SEPTEMBER 1,1995**
Page 2 of 2

| | Qty | Description |
|---|---|---|
| **MOBILE CONFIGURATION:** | 1 | AS/400 Model 510-2144 Service Level, 28.5 RPR, 1 GB |
| | 58 | GB of DASD |
| | 1 | Tape: 3570-B01 Tape Drive, 1-drive, 20-tape changer |
| | 1 | 9348 Tape Drive, 1600/6250 bpi |
| | 1 | Line Printer, 1200 lpm |
| | 12 | 3196 or equivalent Terminals |
| | 2 | 6X40 Twinax Workstation Controller |
| | 28 | RS232 Communication Ports |
| | 1 | Ethernet Adapter |
| | | |
| | 1 | ISDN BRI with 2 Bearer Channels (St. Louis)* |
| | 1 | ISDN BRI with 2 Bearer Channels (Chicago)* |
| | 1 | Codex UTA 220* |
| | 6 | Analog Dial Lines* |
| | | |
| | 28 | QuickShip SunNet III Modem Pairs** |
| | 1 | QuickShip 22004 AN Wellfleet Router** |
| | | |
| | 1 | Mobile Diesel Generator (50 KW (62.5 KVA) @ 60HZ) |
| | 1 | Recoverlink Remote Operations Console |

\* To be provided to Subscriber at the Primary or Alternate Recovery Facility only and will be governed by the General Multiple Disaster Procedures, in the event of a Multiple Disaster.

\*\* With respect to services related to the Quick Ship Equipment subscribed to on the Specified Schedule, Section 4 (Liability and Indemnification) of the Agreement sets forth the limitations of liability of SunGard, its suppliers, subcontractors, assignees and agents, and all such parties are intended beneficiaries of the limitations of liability set forth in Section 4.

*THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.*

SUNGARD Recovery Services Inc.

## ADDENDUM TO SCHEDULE _B_
## TO RECOVERY SERVICES AGREEMENT DATED September 1, 1995

The Recovery Services Agreement, having the above date, between SunGard Recovery Services Inc. ("SunGard") and the Subscriber named below, ("Agreement"), with regard to the Schedule identified above ("Specified Schedule") is amended effective _August 29, 1997_, as follows:

Adding the following Equipment to the Workgroup Configuration:

   1       Cisco 4000 Router (or equivalent) w/ 1- Ethernet Port, 1 – V.35 WAN Port

---

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Addendum and ratify the terms of the Agreement.

**SUNGARD RECOVERY SERVICES INC.**

BY: _X̶ ̶ ̶k̶ ̶C̶ ̶d̶i̶v̶_

PRINT NAME: _DOMINICK  AMADIO_

PRINT TITLE: _CONTRACTS OFFICER_

DATE SIGNED: _9/18_ , 19_57_

**SUBSCRIBER: Unisource**

BY: _C. Y. Fitzpatrick_

PRINT NAME: _Carolle Y. Fitzpatrick_

PRINT TITLE: _Director, Process & Information Midwest Region_

DATE SIGNED: _Sept. 4, 1997_ , 19____

---

**_THE TERMS OF THIS ADDENDUM ARE CONFIDENTIAL._**

SUNGARD® Recovery Services Inc.

## ADDENDUM TO SCHEDULE C
## TO RECOVERY SERVICES AGREEMENT DATED September 1, 1995

The Recovery Services Agreement, having the above date, between SunGard Recovery Services Inc. ("SunGard") and the Subscriber named below, ("Agreement"), with regard to the Schedule identified above ("Specified Schedule") is amended effective  August 29, 1997 , as follows:

Adding the following Equipment to the Workgroup Configuration:

1        Cisco 4000 Router (or equivalent) w/ 1- Ethernet Port, 1 – V.35 WAN Port

---

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Addendum and ratify the terms of the Agreement.

**SUNGARD RECOVERY SERVICES INC.**

BY: _Dick Amadio_

PRINT NAME: _DOMINICK AMADIO_

PRINT TITLE: _CONTRACTS OFFICER_

DATE SIGNED: _9/18_ , 19 _97_

**SUBSCRIBER: Unisource**

BY: _C. Y. Fitzpatrick_

PRINT NAME: _Carolle Y. Fitzpatrick_

PRINT TITLE: _Director, Process & Informati_
_Midwest Region_

DATE SIGNED: _Sept. 4, 1997_ , 19 ____

---

**THE TERMS OF THIS ADDENDUM ARE CONFIDENTIAL.**

**INDEX 3**



**unisource®**
a **Georgia-Pacific** company

Unisource Worldwide, Inc.
North Point Office Building
One East Uwchlan Ave., Suite 200
Exton, PA 19341

Tel 610.280-5845
Fax 610.280-5407

March 8, 2000

Ms. Jennifer Jones
SunGard Recovery Systems, Inc.
1285 Drummers Lane
Wayne, PA 19087

Dear Ms. Jones:

This letter will confirm the position of Unisource with regard to our disaster recovery agreement with
SunGard covering our St. Louis operations. In early October Scott Moll, Unisource Director of
Technical Services, and me met with Rob Dibrino and Paula Moore of SunGard. We had been trying to
arrange a meeting with SunGard for several months but due to scheduling conflicts on both sides we kept
pushing back the meeting. Our purpose in calling the meeting was to find out what service SunGard was
providing Unisource. We had a copy of the contract covering our data center in Cincinnati, but we did
not have a contract for the services SunGard was billing us for in St. Louis. We were receiving three
monthly invoices for St. Louis totaling more that $7,500. During the meeting we informed Rob and
Paula that we would like to get out of the contract covering our St. Louis operations because we were
dissatisfied with the service and we did not believe the contract would work in the event of a disaster.
Our dissatisfaction was based on the fact that we hadn't had any contact with our SunGard
representative.

We believe that the value SunGard brings as a business partner is in sharing its experience with the
customer. We did not see this value in our relationship. In fact, our disaster recovery plan had never
been tested since our contract was signed in 1995. Further, we no longer were using the same model of
the AS 400 that the contract covered and our data center was no longer in St. Louis. Neither Rob nor
Paula brought a copy of our contract to the meeting and they did not know the terms. Rob explained that
some contracts renew automatically unless notice is given. We emphatically stated that we did not want
this contract to renew and we would not honor an automatic renewal. We asked Rob and Paula to get a
copy of the contract to us as soon as possible and they agreed that that they would. After several weeks I
had not received a copy of the contract and I called Paula. She advised me that she had turned this over
to Joe Walsh, the St. Louis SunGard representative. The St. Louis representative was one of the reasons
we were so dissatisfied in the first place. Joe did contact me in December to inquire about outstanding
bills I had been holding until our issues are resolved. Joe was aware a meeting had taken place but he
was not aware of what was discussed. He told me that he had inherited our account from another rep.
Joe told me that the contract renewed as of January 1. I explained what we discussed at our October

March 8, 2000
Page 2 of 2

meeting and how unhappy Unisource was with the relationship. He sent me a copy of the contract. I agreed to pay Unisource's outstanding bills through September 30. He said he would pass my complaints to SunGard management. In early January, Unisource received a call from a collection analyst from SunGard inquiring about past due bills. I had the call transferred to me and asked to speak to a manager. I was transferred to Susan Bring who tried to be helpful but could only relay my message to Rob DiBrino and Joe Walsh via email. A copy of that email is attached. That was the last correspondence I had with SunGard until two weeks ago when I was notified that a new representative, Chris Cavanaugh, contacted Christine Gregory, who is our safety coordinator in St. Louis, about the contract renewing. Chris Cavanaugh informed Christine that the contract renewed February 1. At this point, I emailed Rob DiBrino and Paula Moore with the attached note. This is when you called me.

Jennifer, I hope you can understand how I feel I have received the "run around" from SunGard. Unisource has made the effort to prevent the contract from being renewed but SunGard has not cooperated. In fact, you would not even accept my email, which is an accepted practice in business today. Unisource's position is that we do not have a contract with SunGard covering our St. Louis operations. Further, because of the service problems outlined above, Unisource will not remit any payments to SunGard for services after September 30.

Please direct any correspondence regarding these matters to my attention.

Sincerely,

*William E. Hennessey*

William E. Hennessey
Financial Controller – IT Systems
Unisource Worldwide, Inc.

cc:    Jim Knight (attachments)
       Scott Moll