## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SUNGARD RECOVERY SERVICES L.P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 02 cv 3845 (JMK) |
| v. | : | |
| | : | |
| UNISOURCE WORLDWIDE, INC., | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT/COUNTERCLAIM-PLAINTIFF
## UNISOURCE WORLDWIDE, INC.'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM COUNTS I AND II

Defendant and counterclaim-plaintiff Unisource Worldwide, Inc. ("Unisource")

respectfully submits this memorandum of law in opposition to plaintiff and counterclaim-

defendant SunGard Recovery Services L.P.'s ("SunGard") motion to dismiss Counts I and II of

Unisource's counterclaims.

## I.    INTRODUCTION

In its motion, SunGard argues that Unisource's counterclaims for fraud and negligent

misrepresentation and concealment (Counts I and II) should be dismissed because Unisource was

aware of SunGard's misrepresentations and concealments by March, 2000, but did not assert its

counterclaims until August, 2002.  *See* SunGard Mem. at 1-2.  From these facts, SunGard

concludes that Counts I and II are barred by Pennsylvania's two-year statute of limitations for

fraud and negligent misrepresentation actions.  *See id*.

As explained more fully below, however, it is not the date on which the fraud and

negligence *occurred*, but the date on which a plaintiff reasonably should have discovered that its

causes of action for fraud and negligence had *accrued*, that triggers the running of the statute of limitations. *See, e.g.*, *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). Unisource's causes of action did not accrue until Unisource became aware that it had sustained *an injury* as a result of SunGard's misrepresentations and concealments. *See, e.g.*, *Abbdulaziz v. City of Philadelphia*, No. 00-5672, 2001 WL 1257441, at *5 (E.D. Pa. Oct. 18, 2001). Thus, Counts I and II of Unisource's counterclaims cannot be dismissed merely on the basis of the time at which Unisource became aware that SunGard had committed its fraudulent and negligent misrepresentation and concealment.

Instead, the relevant date for statute of limitations purposes is the date on which Unisource reasonably should have discovered that its causes of action had accrued. Unisource has not alleged in its counterclaims the dates on which it suffered an injury as a result of SunGard's misrepresentations and concealments or the date on which it became aware that it had suffered such an injury, so it is not apparent on the face of the counterclaims when Unisource's causes of action accrued. The date of the accrual of Unisource's causes of action therefore is a factual issue that cannot be resolved on this Rule 12(b)(6) motion. *See Davis v. Grusemeyer*, 996 F.2d 617, 623 n.10 (3d Cir. 1993); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). Thus, SunGard's motion to dismiss Counts I and II of Unisource's counterclaims is premature and should be denied.

## II.    **FACTUAL BACKGROUND**[1]

Effective September 1, 1995, Unisource and SunGard entered into the Recovery Services Agreement attached as Exhibit "A" to SunGard's complaint (the "Agreement"). *See* Answer,

---

[1]    The following facts, which are drawn from Unisource's counterclaims, must be taken as true, and all reasonable inferences therefrom must be drawn in Unisource's favor, for purposes of this Rule 12(b)(6) motion. *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

Affirmative Defenses and Counterclaims (hereinafter, "Counterclaims") ¶ 41.  Under the

Agreement, SunGard promised to provide emergency data recovery and related services for an

AS 400 mainframe computer that was contained in a Unisource facility located in St. Louis,

Missouri and serviced through a Unisource facility in Itasca, Illinois.  *See id.* ¶ 42.

By September, 1999, Unisource had begun using a different version of the AS 400

mainframe than was covered by the Agreement, and had moved the AS 400 mainframe to its

facility in Exton, Pennsylvania.  *See id.* ¶ 43.  Unisource therefore no longer required the services

that SunGard had agreed to provide in the Agreement.  *See id.*

At this same time, Unisource personnel began noticing that Unisource was receiving

three monthly invoices from SunGard totaling $7,500, but that Unisource had not received any

visits from a SunGard representative, nor any user's guides, updates or revisions.  *See id.* ¶ 42.

Further, SunGard's services had never been tested.  *See id.*  Upon investigating the basis for

SunGard's invoices, Unisource was unable to locate a copy of the Agreement to determine what

services SunGard was providing, or was supposed to provide, in exchange for the payment of

these invoices.  *See id.* ¶ 45.  Unisource was also unaware of the formal requirements, if any, for

terminating the Agreement.  *See id.*

Accordingly, in or about September, 1999, Unisource contacted SunGard and asked

SunGard to provide it with a copy of the Agreement.  *See id.* ¶ 46.  Unisource, through its

representatives William Hennessey and Scott Moll, made it clear to SunGard that Unisource did

not have a copy of the Agreement, was not aware of its terms, and was relying on SunGard to

provide a copy of the Agreement to Unisource so that it could verify the pertinent contract terms.

*See id.*  SunGard, through its representatives Robert DiBrino and Paula Moore, promised to give Unisource a copy of the Agreement, but also asked to be allowed to send representatives to meet with Unisource and deliver the Agreement in person.  *See id.* ¶ 47.

Unisource agreed to meet with SunGard on the understanding that SunGard would be bringing a copy of the Agreement to the meeting so that Unisource could review and confirm its terms.  *See id.* ¶ 48.  Unisource also made it clear to SunGard that the meeting would be for the purpose of winding up the parties' relations under the Agreement.  *See id.* ¶ 42.

In early October, 1999, Messrs. Hennessey and Moll of Unisource met with Mr. DiBrino and Ms. Moore of SunGard.  *See id.* ¶ 49.  SunGard, despite its promise to do so, failed to bring a copy of the Agreement to the meeting.  *See id.* ¶ 50.  In fact, both Mr. DiBrino and Ms. Moore professed ignorance of the Agreement's terms.  *See id.*  Instead of coming prepared to discuss the winding up of the Agreement or its terms, Mr. DiBrino and Ms. Moore persisted in attempting to sell Unisource *even more* services, even though Unisource had made clear that it no longer wanted to purchase *any* services from SunGard for its St. Louis or Itasca facilities.  *See id.*

In response, Messrs. Moll and Hennessey clearly and adamantly explained to SunGard that it no longer required SunGard's services for the St. Louis or Itasca facilities and that it wanted to terminate the Agreement as soon as possible.  *See id.* ¶ 51.  When Mr. DiBrino mentioned that "some" of SunGard's contracts automatically renew unless a termination notice is given, Messrs. Hennessey and Moll emphatically stated that they did not want the Agreement to renew automatically and repeated their request that SunGard provide them with a copy of the Agreement as soon as possible so that Unisource could exercise its right to insure that the Agreement did not renew.  *See id.*  Mr. DiBrino and Ms. Moore again promised to provide Unisource with a copy of the Agreement.  *See id.*

By failing to bring a copy of the Agreement to the meeting or accurately advise Unisource of its terms, Moore and DiBrino fraudulently or negligently concealed from Unisource the true terms of the Agreement despite Unisource's clearly professed ignorance of those terms and its express, repeated requests for a copy of the Agreement. *See id.* ¶ 52.

By approximately two weeks after the meeting, SunGard still had not provided Unisource with a copy of the Agreement, despite two requests by Unisource and SunGard's promise to do so, and despite Unisource's express statement that it wished to review the Agreement in order to confirm the Agreement's terms. *See id.* ¶ 53. Accordingly, William Hennessey called Paula Moore of SunGard to inquire into the status of the Agreement. *See id.* ¶ 54. Ms. Moore informed Mr. Hennessey that she had referred the matter to Joe Walsh, SunGard's St. Louis representative. *See id.* Mr. Walsh, however, failed to contact Mr. Hennessey until December, 1999. *See id.* ¶ 55. At this time, Mr. Walsh falsely and inaccurately advised Mr. Hennessey that the entire Agreement had already automatically renewed for another term, effective January 1, 2000. *See id*

Mr. Walsh's statements were false, inaccurate and misleading. *See id.* ¶ 56. The statements were false and inaccurate in that at least one schedule to the Agreement, Schedule A-2, was not scheduled to conclude until June 30, 2000, and written notice to prevent the automatic renewal of that schedule therefore could have provided, under the terms of the Agreement, as late as March 30, 2000. *See id.* Moreover, even under SunGard's incorrect reading of Schedule A-2, that schedule was not due to conclude until January 31, 2000. *See id.* In addition, Schedules B and C would not automatically renew again until August 31, 2000. *See id.* Mr. Walsh's statements were misleading in that Unisource, without the benefit of a copy of the written Agreement, was unable to detect their inaccuracy. *See id.*

After this conversation, Mr. Walsh finally sent Mr. Hennessey a copy of the Agreement. *See id.* ¶ 57. By that time, however, it was too late for Unisource to provide written notice of termination far enough in advance to prevent the automatic renewal of Schedule A-2 that SunGard now alleges was due on or before October 31, 1999. *See id.* Thereafter, Unisource made repeated attempts to secure SunGard's agreement to allow it to prevent the alleged automatic renewal, but to no avail. *See id.* ¶ 58.

Despite SunGard's knowledge that Unisource wanted to terminate the contract before any automatic renewal; despite Unisource's clear and vehement oral termination of the entire Agreement in October, 1999, and its written termination notice of March 8, 2000; and despite SunGard's repeated failure to provide Unisource with a copy of the Agreement, as it promised to do, or to explain the automatic renewal provision to Unisource during the time within which Unisource could have prevented by written notice the automatic renewal upon which SunGard now relies, SunGard has still refused to agree to allow Unisource to terminate the Agreement. On the contrary, SunGard insists to this day that Unisource is obligated to pay it until January 31, 2003 for services under the Agreement that SunGard knows Unisource has not required since at least September of 1999. *See id.* ¶ 59

In addition, SunGard claims that Unisource has never terminated Schedule C and that Unisource is obligated to pay for services under that schedule until August 31, 2003. In fact, Unisource terminated Schedule C both orally in October 1999 and in writing in March 2000, so Schedule C terminated effective August 31, 2000 and did not automatically renew. *See id.* ¶ 60.

On the basis of these facts, Unisource seeks damages resulting from SunGard's fraud and negligent misrepresentation and concealment in Counts I and II of its counterclaims. *See id.*

¶¶ 61-83.  Unisource does not allege in its counterclaims the date on which it first sustained an injury and began to incur damages as a result of SunGard's fraud and negligent misrepresentation.  *See id.* ¶¶ 40-83.

## III.   ARGUMENT

### A.    The Standard For Dismissal Under Rule 12(b)(6) Of The Federal Rules Of Civil Procedure Is Strict.

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court's inquiry is limited to "whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief."  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *Synesiou v. Designtomarket, Inc.*, No. 01-5358, 2002 WL 501494, at *1 (E.D. Pa. April 3, 2002) (quoting *Nami*).  "In considering a Rule 12(b)(6) motion, [the Court] does not consider whether the plaintiff[] will ultimately prevail, only whether [it is] entitled to offer evidence to support [its] claims."  *Nami*, 82 F.3d at 65.  In conducting this inquiry, the Court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  *Id.*  A Rule 12(b)(6) motion to dismiss may be granted "only if it appears that the plaintiff[] could prove *no* set of facts that would entitled [it] to relief."  *Id.* (emphasis added).

Because SunGard seeks the dismissal of Counts I and II of Unisource's counterclaims solely on the basis of the statute of limitations, SunGard bears a particularly heavy burden.  As the U.S. Court of Appeals for the Third Circuit has explained, "the applicability of the statute of limitations usually implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action; accordingly, 'defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.'"  *Davis v. Grusemeyer*, 996 F.2d 617, 623 n.10 (3d Cir. 1993) (citation omitted).

SunGard cannot meet that burden here. SunGard's motion to dismiss should be denied because Unisource can (and intends) to prove, consistent with the allegations contained in its counterclaims, that it filed its counterclaims for fraud and negligent misrepresentation and concealment within Pennsylvania's two-year statute of limitations.

**B.     The Accrual Of Counts I and II Within Two Years Before Unisource Asserted Them Is Consistent With The Allegations Contained In Unisource's Counterclaims.**

In its brief, SunGard argues that Counts I and II of Unisource's counterclaims are time-barred because Unisource was aware of the falsity of SunGard's representations at least by March, 20002, but did not assert Counts I and II until August, 2002. *See* SunGard Mem. at 1. Thus, according to SunGard, Unisource failed to bring Counts I and II of its counterclaims within the two-year statute of limitations that governs those claims set forth in 42 Pa. C.S. § 5524(7). *See id.* at 1-2.

SunGard's argument fails because it incorrectly focuses only the dates on which the mis-representations and concealment *occurred*, and does not address when Unisource's causes of action based on SunGard's misrepresentations and concealment actually *accrued*. The date of accrual, however, and not the date of the commission of the tortious conduct, is what triggers the running of the statute of limitations: "The statute of limitations begins to run as soon as the underlying cause of action accrues." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991).

Here, it cannot be determined from the face of the counterclaims when Counts I and II accrued. Under Pennsylvania Law, "[t]he true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion." *Kapil v. Ass'n of Pennsylvania State Coll. and Univ. Faculties*, 504 Pa. 92, 99, 470 A.2d 482, 485 (1983). *See also Resolution Trust Corp. v. Farmer*, 865 F. Supp.

1143, 1149-50 (E.D. Pa. 1994) ("For tort actions, the general rule in Pennsylvania is that the statute [of limitations] begins to run when the cause of action arises, as determined by the occurrence of the final significant event necessary to make the claim suable.").

Obviously, a plaintiff may not maintain an action to a successful conclusion until all of the elements of the cause of action are present. *Davis*, 996 F.2d at 623 n.10. One of the essential elements of both fraud and negligent misrepresentation claims is injury and damages proximately caused by the defendant's conduct. *See, e.g.*, *SmithKline Beecham Corp. v. Eastern Applicators, Inc.*, 99-CV-6552, 2002 WL 1197763, at *8 (E.D. Pa. May 24, 2002) (citing *Gibbs v. Ernst*, 538 Pa. 193, 207-08, 210, 647 A.2d 882, 889 (1994)) (setting forth injury as an essential element of claims for fraudulent and negligent misrepresentation under Pennsylvania law). Thus, Unisource's claims for fraud and negligent misrepresentation and concealment could not have been brought, and therefore did not accrue, until Unisource suffered an injury and damages as a result of SunGard's fraud and negligent misrepresentation and concealment.

Because injury is an essential element of claims for fraud and negligent misrepresentation, both this Court and the U.S. Court of Appeals for the Third Circuit have recognized that it generally is the date of *injury*, not the date on which the misrepresentation occurred, that triggers the running of the statute of limitations. *See, e.g., Bohus*, 950 F.2d at 924 ("Most tort causes of action . . . accrue *when the injury is sustained*.") (emphasis added); *Gruber v. Price Waterhouse*, 911 F.2d 960, 962 (3d Cir. 1990) (affirming district court's holding, under Pennsylvania law, that a common law fraud claim must be brought within "two years from the date [plaintiff] knew or should have known *of the injury* and its cause") (emphasis added). As this Court recently explained: "A claim for fraud accrues *when the injury is suffered*, and the statute begins to run when the plaintiff knows, or reasonably should know, *that he or she has*

been injured and that the injury was caused by the conduct of another." *Abbdulaziz v. City of Philadelphia*, No. 00-5672, 2001 WL 1257441, at *5 (E.D. Pa. Oct. 18, 2001) (citation omitted). *See also O'Keefe v. AAMCO Transmissions, Inc.*, No. 91-2506, 1992 WL 38441, at *2 (E.D. Pa. Feb. 24, 1992) ("Pennsylvania's two year statute of limitations for fraud begins to run when the cause of action accrues, that is, when the plaintiff discovers or should have discovered *the injury* with the exercise of reasonable diligence.") (emphasis added).[2]

Here, Unisource has not alleged in its counterclaims the date on which it sustained an injury as a result of SunGard's fraud and negligent misrepresentation and concealment.[3]  A reasonable inference that may (and therefore, for purposes of SunGard's motion, must) be drawn from Unisource's counterclaims is that Unisource did not sustain an injury as a result of SunGard's fraud and negligent misrepresentation and concealment until sometime after it became aware that the fraud and negligent misrepresentation and concealment had occurred – for example, when Unisource began to incur expenses as a result of SunGard's unjustified insistence that Schedule A-2 to the Agreement had automatically renewed by, for example, being forced to defend against SunGard's legal claims.

---

[2]     Although this Court also has stated that that "[a] cause of action for fraud does not accrue until 'the fraud has been discovered by the exercise of due diligence,'" s*ee, e.g., Falbo v. State Farm Life Ins. Co.*, No. 96-5540, 1997 WL 116988, at *10 (E.D. Pa. March 13, 1997) (quoting *Bhatla v. Resort Dev. Corp.*, 720 F. Supp. 501, 512 (W.D. Pa. 1989)), that statement is traceable back to the U.S. District Court for the Western District of Pennsylvania's decision in *Bhatla*, which in turn is based on a misreading of a statement contained in *Rothman v. Fillette*, 305 Pa. 259, 266 n.3, 469 A.2d 543, 546 n.3 (1983).  In *Rothman*, the Pennsylvania Supreme Court addressed the tolling of the statute of limitations, and not the accrual of a cause of action, and held merely "that fraud or deceit tolls the statute of limitations until such time as the fraud has been discovered by the exercise of due diligence." *Rothman*, 305 Pa. at 266 n.3, 469 A.2d at 546 (so holding); *Bhatla*, 720 F. Supp. at 512 (relying solely on *Rothman*).  *Rothman* did not address the accrual of a cause of action for fraud.  In any event, the *Bhatla* court went on to hold that "[p]laintiffs fail to recognize that it is not when the fraud occurred, but when the cause of action for fraud accrued" that determined whether Pennsylvania's six- or two-year statute of limitations applied, thus recognizing the distinction between the commission of fraud and the accrual of a cause of action for fraud.  *Bhatla*, 720 F. Supp. at 512.  Thus, neither *Rothman* nor *Bhatla* are authority for the proposition that a cause of action for fraud begins to run as soon as the fraud occurs.  Instead, as explained by the authorities cited above, it is a plaintiff's discovery that the fraud has resulted in an injury that triggers the running of the statute of limitations.

[3]     Nor, Unisource notes, was it required to do so.  *See, e.g., Fyk v. Roth*, No. 94-3826, 1995 WL 290444, at *2 (E.D. Pa. May 9, 1995) (holding that a claim for fraud was stated with the requisite particularity "[a]lthough plaintiffs do not detail specific dates").

Pennsylvania courts have recognized that fraud and negligence may not result in actual injury until some time after the date on which the fraudulent and negligent conduct occurred. In *Moore v. Farley*, No. 88-2033, 1989 WL 90176 (W.D. Pa. March 25, 1989), the plaintiffs sued various defendants for, among other things, fraud and negligence arising out of defendants' representations concerning an investment scheme. *See id.* at *1. According to plaintiffs, the defendants falsely represented that the investment would yield substantial tax benefits and deductions. *See id.* After plaintiffs brought suit, plaintiffs alleged that their causes of action for fraud and negligence had accrued prior to February 18, 1983 (the date on which Pennsylvania's statute of limitations for fraud changed from six years to two years) because the alleged fraud had occurred by then. *See id.* The court, however, disagreed:

> Plaintiffs suffered no cognizable injury, however, until the IRS began issuing notices to plaintiffs in 1984 stating that the investments were economic shams and disallowing the deductions. Therefore, plaintiffs' fraud and negligence causes of action accrued sometime in 1984, at which time the final significant event necessary to make the claims suable – injury – occurred.

*Id.* at *2. Similarly, in the case at bar, if Unisource did not suffer an injury as a result of SunGard's fraudulent and negligent conduct until sometime after that conduct occurred, then Unisource's causes of action would not have accrued until it suffered the injury.

That is an issue that cannot be resolved on the face of the counterclaims. Because the date on which Unisource actually suffered the injury (and therefore the date that its causes of action accrued) cannot be determined from the face of Unisource's counterclaims, SunGard's argument that those counterclaims are time-barred cannot be decided on a Rule 12(b)(6) motion. *See, e.g.*, *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) ("If the [statute of limitations] bar is not apparent on the face of the complaint, then it may not afford the dismissal of the complaint under Rule 12(b)(6)."); *Crum and Forster Ins. Co. v. Wadell Dockery*, No. 95-

663, 1995 WL 230243, at *1 (E.D. Pa. April 13, 1995) (denying Rule 12(b)(6) motion to dismiss state-law claims for fraud and negligence where "on the present record, it is impossible to determine when such claims may have accrued").

The application of Pennsylvania's discovery rule adds another factual wrinkle to the statute of limitations issue that cannot be resolved on a Rule 12(b)(6) motion.  Under the discovery rule, which applies to fraud claims, "aggrieved parties must . . . bring their claim within two years of when they learned, or should have learned, through the exercise of due diligence, that they have a cause of action."  *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 148 (3d Cir. 1997).  "The point at which the plaintiff should reasonably be aware that he or she has suffered an injury is generally an issue of fact to be determined by the jury."  *Abbdulaziz,* 2001 WL 1257441, at *6.

Here, there are factual questions concerning not only the date on which Unisource first suffered an injury and damages as a result of SunGard's conduct, but also the date by which Unisource reasonably should have discovered that it had begun to suffer such injury and damages.  In light of these factual issues, SunGard's motion is at best premature, and in fact unfounded, and should be denied.

IV.    **CONCLUSION**

For all of the foregoing reasons, Unisource respectfully requests that SunGard's motion to dismiss Counts I and II of Unisource's counterclaims be dismissed.

Respectfully submitted,

_____
Howard D. Scher (Pa. No. 03673)
Craig D. Mills (Pa. No. 81331)
Eliot G. Long (Pa. No. 84970)
BUCHANAN INGERSOLL, P.C.
Eleven Penn Center
1835 Market – 14th Floor
Philadelphia, PA  19103
Tel.:  (215) 665-8700
Fax.: (215) 665-8760

Attorneys for Defendant and
Counterclaim-Plaintiff
Unisource Worldwide, Inc.

Dated:  September 26, 2002

## <u>CERTIFICATE OF SERVICE</u>

I, Eliot G. Long, hereby certify that, on this 26th day of September, 2002, I caused a true and correct copy of the foregoing Defendant/Counterclaim-Plaintiff Unisource Worldwide, Inc.'s Memorandum of Law in Opposition to Motion to Dismiss Counterclaim Counts I and II to be served on the following by hand delivery:

> James T. Smith, Esquire
> Rebecca D. Ward, Esquire
> Blank, Rome, Comisky & McCauley LLP
> One Logan Square
> Philadelphia, PA  19103
>
> Attorneys for Plaintiff/Counterclaim-Defendant
> SunGard Recovery Services L.P.

_____
Eliot G. Long